153 So.2d 226

Harold E. SMITH

v.

Ruby JONES and State of Alabama.

6 Div. 693.

Supreme Court of Alabama.

May 9, 1963.

Anthony L. Cicio, Birmingham, for appellant.

Quinton R. Bowers and Hugh A. Locke, Birmingham, for appellees.

## PER CURIAM.

Appellant, Harold E. Smith, aggrieved over the award of his six-year-old son to the child's maternal grandmother, appeals here to reverse and remand the custodial decree rendered by the Jefferson Circuit Court, in equity.

The proceedings for custody of the child originated in the Juvenile and Domestic Relations Court of Jefferson County, where the custody of the child was awarded to the grandmother. On appeal, the circuit court rendered a custodial decree in favor of the grandmother without making any specific finding of facts.

The undisputed evidence here presented is that the mother of the child died when her son, the subject of this litigation, was only thirteen months old. At that time, the grandmother, with the approval of appellant, who was a career man in the United States Navy with the rank of a petty officer, brought the baby back to Birmingham from Virginia where the mother died in a navy hospital. The mother had been in the navy, but was not at the time of her death.

The father was in the navy at his wife's death and also when the hearing was had on the custodial proceedings in Jefferson County. His tenure of service at the time was eighteen years. He testified that he expected to retire after two years and devote his time to civilian employment, so that he could look after his son. With the exception of about two years he was on sea duty in the navy. At the time of the trial he was assigned to land duty.

He had married a woman in Jacksonville, Florida, who was 49 years of age at the time of the trial and was thirteen years his senior. This wife had been married three times before, culminating in at least one divorce. He boarded in his wife's home more than five weeks prior to the marriage. Part of that time his wife's sister and her husband were present in the home along with the son, the subject of this suit, who came on a short visit.

It is also undisputed that the father made an allotment to his son in the sum of $75.00 per month, a part of which was a supplement by the government. It also appears from the evidence, without dispute, that the grandmother, for the grandson, gets about $55.00 per month social security benefits accruing from his mother's social security status at the time of her death.

The wife of Mr. Smith testified that she was employed by L. B. Price Mercantile Company with earnings of $350.00 per month and upwards. She further testified that if her husband was awarded the custody of his son, she planned to quit her employment to stay at home and look after the child.

There was disputed testimony as to the alcoholic imbibing habits of the father. Appellee, the grandmother, was very vehement and accusative of the intemperate drinking habits of appellant. She insisted that when her daughter died, appellant came to the hospital heavily under the influence of alcohol; and that when he would come to Birmingham after the death of his wife to visit, which was about once a year, he was

always drinking to excess; and that on other occasions when he would call over the telephone, she could tell from the manner of his speech that he was drinking. Mr. Smith admitted that on one occasion while in Birmingham he was arrested with another and jailed for public drunkenness. He denied excessive drinking on other occasions and denied that he was under the influence of alcohol when his wife died.

It appears from the evidence that the child visited his father in Jacksonville, Florida, when, as we have already stated, he was boarding at the home of his present wife. At another time the child went with his father to the home of his paternal grandparents in Mississippi, at which time the father gave him a deactivated 22 rifle, admitting that he also bought some shells for the rifle, but did not give them to him inasmuch as the rifle had no firing pin. The maternal grandmother contended that he also gave him a switch blade knife, which was introduced in evidence. The father contended that on numerous occasions he had given his son presents suitable for his age.

Several witnesses testified as to the good character of the grandmother; and so far as the record reveals, there was no accusation against her by her son-in-law except that she was loquacious, which the record to some extent bears out. However, it appears that she was industrious, being employed by The Birmingham News in some capacity; and while away from home hired a competent Negro maid to stay at her home and look after the child.

We have read all the testimony in this case in an effort to find out the truth of the contested contentions of the parties. We are conscious that the courts have a definite and heavy responsibility in determining what custodial disposition should be made of a small child; that such disposition usually is a very important factor in molding its future and character.

We have also considered our prior holdings that a parent has the right to the custody of his child, unless there is a strong showing that it would be against the best interests of the child or of the state. Stoddard v. Bruner, 217 Ala. 207, 115 So. 252[4].

Also, we are aware that in the same case we held that in a proceeding for the custody of a child, the presumption is that the interests of the child and the state will be served by giving the custody of the child to the parent.

However, this presumption is not conclusive. The court is bound to consider the best interests of the child and its welfare is paramount.

We also held in the case of Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910[8], that the decree of a nisi-prius court should be given the effect of a jury verdict when evidence is heard ore tenus (as here), but this rule has no application where the trial court erroneously applies the law to the facts before him.

We conclude that the trial judge did not erroneously apply the law to the evidence before him. We further conclude that the award of the child to the custody and care of the grandmother, granting to the father the right of visiting with the child at its domicile on such occasions as he deems best, and also the right to have the child visit him at his place of habitation during the month of July each year, was for the best interests and welfare of the child at this time and until there is a change of conditions warranting a revision of the custodial order.

In view of the evidence, too extensive to detail in this opinion, we think the removal of the child from the home of his grandmother, where he has been adequately nurtured and cared for in an atmosphere of love and good morals since he was thirteen months old, with sufficient income to provide him with reasonable necessities, both

in health and sickness, to the home of his father, whose drinking habits are at least questionable under the evidence as to excess, and with whom the child has had only occasional association, would temporarily, if not permanently affect and blight his happiness and welfare. Then, too, the navy career of the father had not been terminated at the time of the trial, leaving uncertain his future assignments to sea duty.

The child would be in the home of a strange woman, whose marriage career had been disrupted three times before her marriage to appellant. We are unable, from the testimony, to place the responsibility for these disruptions. Her seniority in age over her present husband could be a factor, along with other causes, in another disruption.

We note that the proceedings in this cause were instituted on July 5, before appellant's marriage on September 3, of the same year. They had known each other since the preceding December. Whether the institution of the custody proceedings had any influence to precipitate the marriage so soon after the proceedings were filed is a matter of conjecture and speculation. Certainly, at the time of the trial in this cause, the wisdom of the marriage, in view of the termination of the prior three, had not been proven. The child should not be subjected to an unknown and uncertain atmosphere during this proving period.

Under all the evidence in this case, we think the trial court wisely awarded custody to the grandmother, that such action is consistent with the welfare and best interests of the child, and the decree should be affirmed. It is so ordered.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.