231 So.2d 152

**Betty Jean STERRETT**

v.

**Edward H. STERRETT, Jr.**

**6 Div. 20.**

Court of Civil Appeals of Alabama.

Jan. 20, 1970.

Jones, Propst & Topazi, Birmingham, for appellant.

No attorney for appellee.

THAGARD, Presiding Judge.

Appellant (complainant below), on May 9, 1968, filed a bill of complaint against appellee (respondent below) alleging that in August 1964 appellee did voluntarily abandon the bed and board of complainant and seeking an absolute divorce from the respondent and the custody and control of their minor children, Edward H. Sterrett, III, and Elissa Carol Sterrett. The bill alleged that the children were in the care, custody and control of their grandparents, who were not made parties to the suit.

The testimony taken on the trial of the divorce suit was not recorded and appears in the record only by way of oral stipulations of counsel made at the hearing on the application of appellant for a rehearing of the decree entered in the original divorce suit, by the terms of which appellant was granted a divorce and the custody of the children was awarded to their paternal grandparents, Mr. and Mrs. Edward H. Sterrett, Sr.

The proceedings in the lower court were rather irregular in that the real contest was between appellant and the senior Sterretts, who had the actual custody and control of the children, and the senior Sterretts did not formally intervene in the lawsuit. However, all parties seem to have dealt with the original divorce suit as if the senior Sterretts were parties, and no point of their participation was made by appellant except in her application to the lower court for a rehearing. In fact, in the stipulation of counsel made on the hearing of the application for a rehearing appears this statement by Mr. Jones, who was appellant's attorney:

"The case came before Your Honor then, on an original bill for divorce, asking for a divorce from the respondent and custody of the children.

"By consent, the parties at that time agreed that since the paternal grandparents had the custody of the children that they would be considered as parties for that aspect of the bill seeking custody."

After hearing, the court entered a decree denying the application for rehearing. This appeal is from the original divorce and custody decree dated January 29, 1969, and the assignments of error have to do with the awarding by said decree of the custody of the children to the senior Sterretts.

Appellant argues only the first assignment of error, viz: "1. The trial court erred in its final decree dated the 29th day of January, 1969, in awarding custody of the minor children of the parties, Edward H. Sterrett, III, and Elissa Carol Sterrett to the paternal grandparents, Mr. and Mrs. Edward H. Sterrett, Sr." The other two assignments of error were to the same point but stated slightly differently.

The background of this case is that sometime early in 1964 the appellant's husband (nominal appellee here) abandoned his wife and went to Atlanta, Georgia, where he lived with and had a baby by one Ella Dalene Patterson. The record shows that on June 16, 1964, appellant filed on the law side of the court a petition for a writ of habeas corpus against her husband, Edward H. Sterrett, Jr., and one Paul Keeton (who Paul Keeton was the record fails to reveal), seeking the custody of her two minor children. On June 13, 1964, the court made an order continuing the hearing on the petition for habeas corpus to August 13, 1964, and providing that "in the interim the children shall be in the custody of their grandmother, Mrs. Irene Sterrett, until further orders of this Honorable Court." At about that time the appellant had a nervous and mental breakdown and voluntarily entered Bryce Hospital for treatment. She was discharged from Bryce in December, 1964, since which time she has been regularly employed by the Department of Health, Education, and Welfare, and was so employed at the time of the hearing in this case. There is a certificate in the record by Dr. Patrick H. Linton dated October 5, 1967, that the appellant "is now in remission from her illness and is competent to care for her children at this time."

Appellant vigorously contends that the law as expounded in Chandler v. Whatley, 238 Ala. 206, 189 So. 751, is the law of this case, and we are inclined to agree. In the Whatley case the mother of a three year old girl had been awarded a divorce and the custody of the child. A few months thereafter she married again. A little more than three years later, the mother died giving birth to another baby girl who survived. Immediately after the mother's death a controversy arose between the child's natural father and her stepfather as to her custody. Litigation followed. The trial court awarded custody to the stepfather. In reversing, Justice Bouldin said, inter alia:

"The law, indulging the presumption that the welfare of this child will be best conserved by awarding her custody to her father, rather than the step-father, ordains that this shall be done, unless such presumption is overcome by clear and convincing evidence that the father is unsuited or unfit to assume the place of a father in providing a safe and comfortable home, proper environment, parental affection, care, training and education." (238 Ala. at page 209, 189 So. at 754)

\* \* \* \* \* \*

"As for the ties grown up between the step-father and the child, or between his parents and the child, much has been said, but not much force is given it in solving this case. All of them entered into the relation willingly, of their own choice, with imputed knowledge, that, in case of the death of the mother, the custody of the child should go to her own father, not strangers to her blood, unless the father was then an unsuitable person to have her custody and rearing." (238 Ala. at page 211, 189 So. at p. 756)

\* \* \* \* \* \*

"We must not overlook the fact, however, that now is the time to determine the status of this child in her home relations for the future years according to the best lights before us. She is entering upon her school life. Swiftly she will approach womanhood. The ties, now so strong on the part of the step-father and his parents, may persist and grow stronger, harder for all to sever.

"On the other hand the father's affection and a deep solicitude for the coming of his daughter into a fine womanhood are the surest to endure. In the years to come her presence in her father's home, with all the blessings that come of natural ties and mutual affection, will be hers. This is the natural relation for her.

"We are fully mindful that conclusions of the trial Judge, earnestly arrived at

**378**

after hearing and seeing those involved is to be given due weight. Sometimes he is said to have a discretion. If a discretion, in the ordinary sense, it is a judicial, reasonable discretion. Indeed it is a judicial finding upon a most delicate far reaching issue.

"We cannot and should not evade responsibility, letting it rest with the trial court. When convinced that he has erred, not so much in his finding of facts, as in the application of sound principles of law in such cases, we must so hold. McLellan v. McLellan, 221 Ala. 363, 129 So. 1; Thomas v. Thomas, 212 Ala. 85, 101 So. 738. We are so convinced." (238 Ala. at page 212, 189 So. at page 757).

Another somewhat more recent Alabama case to the same point is Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910, in which the suit was between the mother of an illegitimate child and foster parents to whom the mother had given the child immediately after its birth. In that case Judge Mayfield said, inter alia:

"We are mindful of the passionate and burning desire of couples who have been denied parenthood to give stability and meaning to their lives by the adoption of children. We also recognize that once a helpless babe is brought into a home, nurtured and cared for by its foster parents, that the tenderness and the depth of the bond between the infant and its benefactors increases with each passing day. We can say without hesitation that the attachment of these foster parents is now as deep as if this child were flesh of their flesh and blood of their blood.

"These natural and human feelings of the foster parents, however, cannot be allowed to sway us from our sworn and bounden duty to enforce the laws of this state. No legal adoption of Barbara Jean Griggs' child was consummated by the Barneses.

"While it is true that the 'pole star' in custody cases is the best interest and

welfare of the child, the courts of this state do not have the power to sever the bonds of blood relationship merely in order to gain some real or fancied advantage for a minor child." (262 Ala. at pages 361 and 362, 78 So.2d at p. 914.)

\* \* \* \* \* \*

"This teen-aged mother, misguided though she was, carried this child, and gave of herself to complete her pregnancy. Alone, disgraced and afraid, she entered the twilight valley of the shadow of death to bring life to this child. Her right to this child is paramount. The natural parents, and in the case of illegitimate children, the natural mother, is entitled to the care and custody of her children, unless good cause is shown why the custody of the natural parent is not in the best interest of the child." (Citations omitted) (262 Ala. at page 362, 78 So.2d at p. 915)

\* \* \* \* \* \*

"The rule that the decree of the nisi prius court should be given the effect of a jury verdict when the evidence was heard ore tenus, is without application where the trial court erroneously applied the law to the facts before him. Here the learned Chancellor's decree seems to be based solely on what he considered the best interest of the minor child without adequate regard to the legal rights of the natural mother due to her blood relationship." (262 Ala. at page 363, 78 So.2d at p. 915)

In the case at bar no evidence was adduced that the mother (appellant) was not a fit and proper person to have the custody of her child. She and her mother testified that she was. The fact that she has been continuously employed by the Department of Health, Education, and Welfare since her discharge from Bryce Hospital indicates character and stability. It is obvious that she consented to the original temporary decree because she was conscious of her own mental illness and she wanted to do what was best for her child at that time. The senior Sterretts accepted the

child with full knowledge that the award was temporary. Doubtless they have acted in good faith and have served the child well. For that they are to be commended. But like Justice Bouldin in Chandler v. Whatley, supra, "We cannot and should not evade responsibility, letting it rest with the trial court. When convinced that he has erred, not so much in his finding of facts, as in the application of sound principles of law in such cases, we must so hold. * * * We are so convinced."

The decree of the trial court is affirmed as to the granting of the divorce from the bonds of matrimony but is reversed and remanded as to the custody of the children with directions to modify the decree so as to award the custody of Edward H. Sterrett, III, and Elissa Carol Sterrett, in keeping with the foregoing opinion.

*Affirmed in part and reversed and remanded in part with directions.*