304 So.2d 595

**In re Edna BRILL**

**v.**

**Julian JOHNSON and Gladys Johnson.**

**Ex parte Edna Brill.**

**SC 884.**

Supreme Court of Alabama.

Nov. 7, 1974.

Rehearing Denied Dec. 5, 1974.

Loma B. Beaty, Fort Payne, for petitioner.

Traylor, Baker & Cole, Fort Payne, for respondents.

**436**

PER CURIAM.

On preliminary examination, the petition for the writ of certiorari to the Court of Civil Appeals, 54 Ala.App. 39, 304 So.2d 591 was granted. Upon further consideration, we hold that the writ was improvidently granted and is due to be quashed.

Writ of certiorari quashed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, McCALL and FAULKNER, JJ., concur.

JONES, J., dissents.

BLOODWORTH, Justice (concurring specially):

I concur with the Per Curiam decision to quash the writ as having been improvidently granted.

The question of the custody of these two minor children has been before four (4) different trial judges. Undoubtedly, each had as his guiding principle the best interests and welfare of these children. Each of these four judges decided that custody should be in the grandparents. Three appellate judges have agreed with this result, seven judges in all.

Not having the opportunity as the four trial judges have had, of seeing and hearing the witnesses testify, and judging their testimony by those objective and subjective standards which trial judges follow, I am unwilling to substitute my judgment for theirs on this critical issue as to whom the custody of these children ought to be given.

■ To adopt such a rigid mechanistic standard, as has been suggested, to award children always to their natural parents if fit, would, in my judgment, obfuscate the rule which has been followed, without deviation, in this jurisdiction for nearly a hundred years—that the best interest and welfare of the children is the polestar for the guidance of all courts in awarding custody of minor children. The rule has been thus expressed:

"Where a court is confronted with the conflicting claims of parents or others for custody of infants, *the fundamental controlling inquiry is the best interest of the child.*" Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966) (Per Lawson, J.) [Emphasis supplied.]

The paternal grandparents were adjudged to be fit and suitable, church-going, hard-working and loving grandparents. Great store was placed upon the children's having been in their home for six years. It is clear from the Court of Civil Appeals' opinion, authored by Judge Holmes, that all the facts upon which that court based its decision are not set out in its opinion. It concluded that, in view of the presumptions favoring the trial court's findings and the primary consideration being the welfare of the children, it could not find the trial judge erred to a reversal. To thus review, and reverse, its decision would not comport with our rules of review on certiorari.

■■ The case of Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939), simply stands for the proposition that in a contest between a natural father and stepfather, equally fit, the natural father prevails. Such is not the issue in the case at bar which is a contest between paternal grandparents and the natural mother, with an express finding by the trial court that the best interest of the children would be served by allowing the custody to remain in the grandparents.

Of course, we have holdings to effect that a parent has a right to the custody of his child *unless* there is a strong showing that *it would be against the best interests of the child.* Smith v. Jones, 275 Ala. 148, 153 So.2d 226 (1963).

Any indication or suggestion said to be gleaned from Chandler v. Whatley, supra, or from any other of our cases, which is

contrary to, or not in accordance with, the guiding principle in awarding custody of minor children—the best interests and welfare of the children—is simply not our rule and should not be followed.

As it was so well expressed by Judge Wright, for the Court of Civil Appeals in Borsdorf v. Mills, 49 Ala.App. 658, 275 So.2d 338 (1973), viz.:

" * * * The principle of priority of right of a parent to custody is founded upon the premise that because of a blood relation and instinct, such parent will better love and care for a child than one not so related. Such premise may be theoretically correct but practical experience has often proved it incorrect. The bonds of love between parent and child are not dependent upon blood relation and instinct, but may be forged as strongly in the crucible of day to day living. Out of the actual relationship of parent and child love grows. It is not merely a product of the biological function of conception and giving birth. To give paramount consideration to the principle of parental priority or ownership in custody decisions would often be an anathema to the best interest of the child."

This writer is keenly aware of the heavy burden and lonely responsibility which rests upon the trial judge, who undertakes to make awards of custody in these cases. It is an awesome task. Nevertheless, it is the trial judge's burden to bear, and the wonder of it all is that judges bear it so well.

I cannot say that the award of custody by the trial judge here was plainly and palpably erroneous.

I applaud the efforts of the mother to rehabilitate herself and simply note, in passing, that the question of custody is always subject to change upon a showing of changed circumstances.

Therefore, I concur in quashing the writ as being improvidently granted.

MERRILL, HARWOOD, MADDOX, McCALL and FAULKNER, JJ., concur.

JONES, Justice (dissenting):

The majority, in quashing the writ, has abandoned a substantive and, in my opinion, an unassailable legal principle in favor of an appellate rule of review—the presumption of correctness of the finding of the trial court. This misconstrues that rule of review in that it omits the parallel rule that a trial court's findings are subject to reversal on review when the holding necessarily resulted from a misapplication of the law to such findings. That is to say, the ore tenus rule evolved from the scope of review principle which prohibits a de novo trial on the weight and credibility of the evidence, and was not intended to produce affirmance for a misapplication of substantive rules of law to the facts.

By allowing the opinion of the Court of Civil Appeals to stand, this Court has now overruled the long-standing common law precedent announced in Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939). Consequently, I am constrained to dissent —respectfully, but as vigorously as the power of my articulation will permit.

I am not unalterably opposed to changing a court made rule of law when the reason for the rule no longer exists. I believe the reason for the rule in *Chandler* is as strong today as it has ever been.

The Court, in deciding to follow the modern "best interest of the child" doctrine rather than the more traditional and natural doctrine of "family unity", obviously feels that the best interests of Mrs. Brill's children will be served by being flooded with the indulging love of grandparents rather than the responsible and natural love of a mother.

I agree with the wisdom of the common law rule, as announced in *Chandler*, which

holds to the contrary and which holding is grounded on the natural relationship of parent and child.

The Court of Civil Appeals based its decision to allow the grandparents to retain custody of the children on the "welfare of the child" rule stated in Stuckey v. Stuckey, 50 Ala.App. 682, 282 So.2d 283 (1973); Linderman v. Linderman, 49 Ala.App. 662, 275 So.2d 342 (1973); Evans v. Wilkes, 48 Ala.App. 363, 265 So.2d 145 (1972); McBride v. McBride, 268 Ala. 619, 109 So.2d 718 (1959).

Here, the flaw in applying this rationale lies in the Court's failure to note the strikingly similar case of Sterrett v. Sterrett, 45 Ala.App. 375, 231 So.2d 152 (1970). There, the Court of Civil Appeals reversed a lower court's decree granting custody of minor children to grandparents and cited two Alabama cases as their authority: Griggs v. Barnes, 262 Ala. 357, 78 So.2d 910 (1955) and Chandler v. Whatley, supra. My position can best be stated by summarizing the rule of law set out in those cases:

> The law indulges the presumption that the welfare of minor children will be best conserved by awarding their custody to the natural parent rather than to nonparent third parties, and ordains that this shall be done unless such presumption is overcome by clear and convincing evidence that the natural parent is unsuited to assume the place of a parent in providing a safe and comfortable home, proper environment, parental affection, care, training and education.

> While it is true that the "polestar" in custody cases is the best interest and welfare of the child, the courts of this state do not have the power to sever the bonds of blood relationship merely in order to gain some real or fancied advantage for a minor child.

The opinion of the Court of Civil Appeals appealed from in this case stands foursquare against the rule set out above. Indeed, it does not even mention the *Sterrett* case. Also, none of the cases. cited are in point, for each of those cases involves either a custody fight between parents or the visitation rights of a parent who has abandoned a child over a period of years. Clearly, neither of these two situations is now before us.

The importance of the family bonds and its concomitant interaction of influence has been stressed since the book of Genesis, and has been an integral function of society since the beginning of man. Today, even though our modern society has evolved into one quite transitory in nature, and the nucleus of the family seems to be widely dispersed, the function of a family, at least as far as the preadolescent sect is concerned, is still a basic necessity of life; and that necessity requires the presence of parental love if at all possible.[1]

In our present situation such parental love is possible, especially in light of the fact that Mrs. Brill was found by the trial Court to "presently have the maturity and stability to enable her to properly train and care for her children." Nevertheless, the majority still feels that they have the power to continue the severance of these natural blood bonds in order to gain some advantage for the child, however "real or fancied" it might seem at the present.

In conclusion, I am opposed to abolishing the rule that as between parent and nonparent, the prima facie right of a parent to custody of a minor child can be defeated only by strong and convincing evidence of the parent's unfitness, or in extreme situations of abandonment of the child by the parent. This common law rule emanates from the natural law and is totally supportive of the "best interest of the child" doctrine.

1. For the physical and psychological effect on the children of our nomadic society, see A Nation of Strangers, Vance Packard (published by David McKay Company, Inc., 1972).

I believe in the wisdom of the common law rule which holds in effect that a parent, as opposed to a nonparent, should be given the custody in order that the child may receive the attention, care, supervision, and kindly advice, which arises from a parent's natural and responsible love and devotion, for which no substitute has ever been found. Human experience also teaches that children grow up more normally when reared by young rather than old people.

The welfare of the children is paramount; but in accomplishing this goal the common law rule of *Chandler*, which is grounded on the premise of the "best interest of the child", in my opinion, should mandate a result favorable to the natural parent.