This is a child custody case of unusual origin with material collateral aspects.
The parents of Rusty Johnson, a child of eight years, were divorced in Pike County Circuit Court, Judge Riley Green sitting, on May 8, 1975. Custody of Rusty, an only child, was, by agreement of the parents, given to June, the mother. Jimmy, the father, was by agreement ordered to pay $75 per month as support. In October 1977, the mother became financially unable to care for herself and her son and voluntarily relinquished complete custody to the father. The father had remarried. In January, 1979, the father moved from Pike County and left Rusty with his paternal grandparents. They immediately placed the child with W.C. and Nell Watkins. Nell Watkins is the sister of the father of Rusty.
After relinquishing custody of Rusty, the mother went to Mississippi and obtained employment as a long-haul truck driver. After a time she began to drive a truck as a team with Pendergrass. They drove and lived together for approximately a year and established a residence in Texas. June called her former mother-in-law from time to time inquiring about Rusty. She sent him money on his birthday and wrote him. In May 1979, after learning that the father had left the child and custody had been taken by the Watkinses, June returned to Troy and obtained an agreement from the father that custody of Rusty be returned to her. Based upon a petition and the agreement of the parents, Judge Green entered judgment on May 12, 1979, returning custody to the mother and directed the sheriff to effect return of Rusty to the mother.
The Watkinses then filed a petition in a separate proceeding before Judge Butts (the other judge of the 12th circuit) in Pike County Court seeking custody of Rusty, alleging the parents to be unfit for custody. Motion for instanter custody was also filed. Instanter temporary custody was granted to the Watkinses ex parte with hearing set thereon for May 17, 1979. There was no hearing set upon the petition for permanent custody. The petitions presented to Judge Butts and the instanter order for custody signed by him were dated May 11. However, they were not filed in the clerk's office until May 14. On May 15, Judge Butts, upon motion of then counsel for the mother, continued the May 17 hearing. That counsel then was replaced. The order of continuance stated that the case was set for "hearing on its merits" on June 20, 1979.
On May 18, the Watkinses filed a motion with Judge Green in the divorce case requesting that he set aside his modification order of May 12 by which he granted custody to the mother. Judge Green immediately set aside the May 12 order as requested without notice to counsel or the parents of Rusty.
The mother appeared in person and by counsel and the father appeared by the same counsel on June 20, 1979, after filing motions to dismiss. Representing the father, counsel moved for a continuance because the father (a truck driver) was unable to leave New Orleans because of the truckers' *Page 853 
strike. Continuance was denied. The court announced in open court that both the petition of the mother for custody to be returned to her in the original case and that of the Watkinses for permanent custody would be heard at the same time. In other words, Judge Butts assumed control of the original case between the father and mother previously heard by Judge Green and combined it for hearing and disposition with the separate action of the Watkinses. Counsel for the parents strenuously objected, insisting that the hearing was set only upon the ex parte order for temporary custody. Counsel stated to the court that the father was a party and the legal custodian of Rusty by virtue of the re-instatement of the judgment of October 1977, after the setting aside by Judge Green of his modification of May 12, 1979, and could not be present for the hearing. Counsel further objected to the consolidation of the two cases and the holding of a hearing for final judgment thereon without previous notice and sufficient opportunity to prepare.
The court proceeded to hear the matters and entered judgment on June 22, 1979, granting custody of the child, Rusty, to the Watkinses, forbidding his removal from the jurisdiction of the court, and granting reasonable visitation rights to the parents upon the condition of the posting by each of a $5,000 cash bond. The parents appeal. We reverse.
The appellants, hereafter referred to as parents, have presented three issues on appeal. The first, succinctly stated, is that the parties who had secured entry of judgment by agreement in the original case were denied due process when that judgment was set aside a few days later upon motion by a stranger to the case without notice according to Rules 5 and 59, ARCP.
We consider that Judge Green erred in setting aside a judgment deciding issues between the parents of Rusty upon the motion of the Watkinses who were not parties in that case and who had not moved for and been granted intervention under Rule 24, ARCP. The Watkinses were without standing in the case between the parents and had no right to challenge the judgment.TRW, Inc. v. Ellipse Corp., 495 F.2d 314 (7th Cir. 1974);Mettee v. Boiling, 266 Ala. 50, 94 So.2d 191 (1957). There was no indication of fraud upon the court or invalidity apparent upon the face of the judgment. There are decisions which permit a non-party to attack a judgment on such grounds. In such cases, the court could have set the judgments aside sua sponte.Kupferman v. Consolidated Research and Manufacturing Corp.,459 F.2d 1072 (2d Cir. 1972); State Farm Mutual Insurance Co. v.Senn, 277 Ala. 508, 172 So.2d 533 (1965); Aiello v. Aiello,272 Ala. 505, 133 So.2d 18 (1961); Taylor v. Jones, 202 Ala. 18,79 So. 356 (1918). It does not cure the error to contend the court had power to set aside the judgment under Rule 59 (d) ARCP. We need not decide whether it did or not. The fact is, it did not set it aside under that rule and for a reason for which it might have granted a motion for new trial.
The continued existence of the judgment giving the mother custody would not have prevented the Watkinses bringing their petition challenging her fitness as a parent and seeking custody, although its existence would have placed the burden upon the Watkinses of overcoming by clear and convincing evidence the primary right of a parent to custody of her own child. The proper forum for the Watkinses was in the original case before Judge Green who was familiar with the parties and had assumed jurisdiction over the child. The action of the Watkinses created the confusion of two cases relating to the same child. Their petition filed before Judge Butts disclosed the existence of the other case and their knowledge of it.
This court considers the setting aside of the judgment granting custody to the mother upon the motion of non-parties without motion to intervene and the conceding of authority to another tribunal without notice, erroneous.
However, we do not reverse the judgment of the trial court for that error nor for the charged error of putting the *Page 854 
parents to trial on the issue of permanent custody without proper notice or opportunity to prepare for trial. We find the judgment of the trial court taking permanent care, custody and control from the natural mother and granting it to the Watkinses so contrary to the evidence and the law as to constitute an abuse of discretion.
We have carefully studied and considered the evidence presented. We have already related the sequence of events occurring since the break up of the marriage and the home into which the child, Rusty, was born.
The evidence further discloses that the mother had custody of Rusty from birth until he was more than five years old. For approximately a year and a half after the divorce and until placing him in the custody of his father, she had sole custody and the burden of support except for nominal assistance. She worked as a nurse's aide and in a dress factory. There is no testimony but that during those five years the mother loved and cared for Rusty. For the stated reason that she could no longer carry the financial burden of his care, she voluntarily relinquished his custody to the father who had since remarried.
For some fifteen months, Rusty was with his father and stepmother. The mother in the meantime had trained and become employable as a truck driver, making it possible to earn far more than she had earned in her former employment. During the period of the father's custody, the mother kept informed through communication with her former mother-in-law. There is inference of a lack of concern and interest by the mother because she did not personally visit or communicate with the child during this period. Although specifically unexplained by her testimony, the mother did testify that she was informed that she would be put in jail by the father if she attempted to see or visit Rusty. Testimony from the father as to that question was unavailable because he was in New Orleans at the time of the hearing.
The evidence showed that upon learning Rusty was no longer with his father, the mother came to Troy and secured the return of legal custody from the father from Judge Green. It was at that point that the Watkinses appeared and sought custody.
There is no question but that the Watkinses are fine people and provided Rusty with love and care for some three months before the mother came for him. They have two children of their own. There appears from the evidence no indication but that the mother now has the means to provide a good home for Rusty. It appears from the evidence that she loves him and that he loves her.
Our courts have long adhered to the principle that the best interests of the child is the fundamental inquiry in every child custody case. Brill v. Johnson, 293 Ala. 435,304 So.2d 595 (1974); Carter v. Harbin, 279 Ala. 237, 184 So.2d 145
(1966). It is also a principle in such cases when there are conflicting claims between a parent and non-parents that the parent has the primary right to custody, Chandler v. Whatley,238 Ala. 206, 189 So. 751 (1939), and that the right to maintain family integrity is a fundamental right protected by the due process standards of the Constitution. May v. Anderson,345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). That principle is compatible with the presumption that parental custody will better serve the best interest of the child,Borsdorf v. Mills, 49 Ala. App. 658, 275 So.2d 338 (1973). That presumption can only be overcome by a strong showing that it would be contrary to the best interests of the child. Smith v.Jones, 275 Ala. 148, 153 So.2d 226 (1963). Our courts have also said many times that the determination of custody in every case must rest upon its own facts. Talley v. Lott, 283 Ala. 499,218 So.2d 828 (1969).
This court is always cognizant of the heavy burden which rests upon the trial court in child custody cases. We presume to alter their judgment only after careful consideration. We recognize that in this case, Rusty has already endured change of home and custodians at least three times in three years. It is likely that concern for the effects of another change entered into *Page 855 
the decision of the trial court to deny custody to the mother. This court has considered that also. However, we also consider the desirability and societal importance of re-establishing a permanent family unit with Rusty and his mother. It is unlikely that living with the Watkinses for only three months at the time of the hearing, with knowledge and memories of his mother, has developed a psychological parent-child relationship between Rusty and the Watkinses. Such a close permanent relationship is, in our opinion, unlikely to develop while Rusty knows the whereabouts of his mother and is visited by her. On the other hand, there has already been a parent-child relationship forged between Rusty and his mother during the first five years of his life. There has been no physical abuse to dampen that relationship. It is reasonable that the wound of the two-year separation (though lengthened by pendency of this appeal) will quickly heal and be forgotten upon reunion. This court deems it to the best interest of Rusty that he be re-united with his mother in a permanent and stable relationship.
We have considered the testimony that the mother lived and worked with her present husband before marriage. In view of their subsequent marriage and establishment of a home, such former relationship, unknown to Rusty unless informed by others, has little relevance to the best interest of Rusty.
It is the judgment of this court that the primary legal right of the mother to custody of her child in this case is consonant with the best interest of the child and the trial court abused its discretion in holding to the contrary. The judgment is hereby reversed and the trial court is directed to enter judgment granting the permanent custody of the child Rusty to the mother, June Johnson Pendergrass.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.