STUART, Justice
(concurring specially).
I am the author of the main opinion, and I wholeheartedly join the special writings of Justice Bolin and Justice Smith. I write specially to express additional views.
Children are a gift from God.[6] They need and deserve the love and support of both their mothers and their fathers. Parents have God-given rights concerning their children, which are and should be protected by state government. With every right we possess, however, comes responsibility. Rights must be claimed and responsibilities assumed or they may be forfeited.
Parental rights require prompt recognition and the discharge of the corresponding responsibility. Young children cannot care for themselves; their needs for protection and care are immediate and continuous. Young children are unique and vulnerable small persons who cannot wait until it is convenient for a parent, male or female, to decide that he or she wants to be entrusted with their care.
Today there is no reason for uncertainty or delay in assuming parental responsibility, as science provides prompt determination of the biological parent of a child and the law offers immediate protection for that parent’s rights. Dramatic advances in DNA testing allow putative fathers to determine biological paternity immediately after the child’s birth.[7] The Alabama State Legislature in the Alabama Uniform Parentage Act, § 26-17-1 et seq., Ala. Code 1975,[8] and the Putative Father Registry Act, § 26-10C-1 et seq., Ala.Code 1975,[9] has provided methods for a father to assert his rights to and assume prompt responsibility for a child before the child’s birth. One objective of these acts is to encourage fathers to step forward and act *662 as fathers. See title to Act No. 84-244, Ala. Acts 1984, which enacted the Alabama Uniform Parentage Act; and title to Act No. 2002^117, Ala. Acts 2002, which amended the Putative Father Registry Act. These acts serve the interests of fathers, mothers, children, and society as a whole.
In Ex parte McLendon, 455 So.2d 863 (Ala.1984), this Court stated:
“A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody.”
455 So.2d at 865. The reasoning behind this holding creating the voluntary-forfeiture-of-custody exception was recently explained:
“The ‘voluntary forfeiture’ exception to a natural parent’s prima facie right to custody recognizes that a parent’s voluntary forfeiture of his or her child tends to rebut the presumption that the parent in question will best provide the love, care, security, and upbringing the child needs. Concomitantly, it is a reflection of the well-established principle that ‘ties of affection resulting from years of association between the' child and its custodian’ are relevant to a determination of the child’s best interests. See generally Dale v. Dale, 54 Ala.App. 505, 507, 310 So.2d 225, 227 (Ala.Civ.App.1975); McGrady v. Brown, 230 Ala. 484, 161 So. 475, 476 (1935)(‘ “relinquishment of ... custody to another and continued acquiescence therein are matters to be considered by the court in determining the question of prime importance — the welfare of the child” (quoting Payne v. Payne, 218 Ala. 330, 331, 118 So. 575, 576 (1928)). As [the Court of Civil Appeals] explained in Borsdorf v. Mills:
“ ‘To tear [a child] from his home and those he knows as his parents and the source of love, safety and security merely to give sanction to a principle of priority of right is unconscionable. The principle of priority of right of parent to custody is founded upon the premise that because of a blood relation and instinct, such parent will better love and care for a child than one not so related. Such premise may be theoretically correct but practical experience has often proved it incorrect. The bonds of love between parent and child are not dependent upon blood relation and instinct, but may be forged as strongly in the crucible of day to day living. Out of the actual relationship of parent and child love grows. It is not merely a product of the biological function of conception and giving birth. To give paramount consideration to the principle of parental priority or ownership in custody decisions would often be an anathema to the best interest of the child.’
“49 Ala.App. 658, 661-62, 275 So.2d 338, 341 (Ala.Civ.App.1973)(quoted in part with approval in Brill v. Johnson, 293 Ala. 435, 437, 304 So.2d 595, 597 (Ala.1974)(Bloodworth, J., concurring specially, and joined by five members- of the Court)).”
R.K. v. R.J., 843 So.2d 774, 777 (Ala.Civ.App.2002)(footnote omitted).
Parental rights are counterbalanced by the responsibilities parents assume with those rights. See Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The father in this case lost his prima facie right to custody because of his failure to timely assume his responsibilities as a father.
NABERS, C.J., and SMITH and BOLIN, JJ., concur.

. Psalms 127:3-5.

. For example, swabs of tissue taken from the mouths of both parents and the newborn infant can be tested allowing an early determination as to biological parentage that was formerly unavailable.

. Under the Uniform Parentage Act, a putative father may file an action to establish his paternity before the birth of the child. See § 26-17-6, Ala.Code 1975. This act also provides protections for the rights of unwed fathers. See § 26-17-3, Ala.Code 1975 ("The parent and child relationship shall extend equally to every child and to every- parent, regardless of the marital status of the parents.”).

. The Putative Father Registry Act allows a putative father to file notice of his intent to claim paternity, which may later be revoked, before the birth of the child.