This is a divorce case with five issues raised by appellant-husband and two issues raised by appellee-wife on cross appeal.
First, husband claims his constitutional right against self-incrimination was violated. He was required, over objection, *Page 297 
to answer questions as to an adulterous affair. (See § 15-3-2, Code 1975). Husband cites Vail v. Vail, 360 So.2d 992 (Ala. 1978), as authority for error. Vail is easily distinguishable from this case. Here, husband testified only as to acts occurring beyond the one-year statute of limitations. In Vail the husband testified to acts which fell within the statute of limitations and exposed him to possible criminal prosecution.
Husband also claims error in the requiring of his sexual partner to testify as to her part in the relationship. We find no error for two reasons. First, the testimony was required only to any acts beyond the one-year statute of limitations. Second, the constitutional privilege against self-incrimination is a personal one. Even an erroneous denial of the privilege to a witness who is not a party, is not an error which a party may claim on appeal. C. Gamble, McElroy's Alabama Evidence 3d, § 374.03.
The husband claims the court erred in requiring him to pay certain expert fees incurred by the wife in preparation of her case. These fees were expenses incurred by wife's attorneys in bringing and prosecuting her suit. It strikes us that such expense, if determined to be reasonably necessary and reasonable in amount, ought to be considered as necessary to her suit as are attorney fees. Whitfield v. Whitfield, 283 Ala. 433, 218 So.2d 146 (1969). The court allowed expenses incurred in representing the wife as a part of the attorney's fees inWhitfield. This court did the same in Cooper v. Cooper, 57 Ala.Civ.App. 674, 331 So.2d 689 (1976). We discern no meaningful distinction between requiring such fees to be paid directly and in assessing them as a part of attorney fees. In either case they are "suit money."
Husband next claims an abuse of discretion in awarding wife's attorneys a fee of $25,000. The amount of attorney's fee to be awarded always rests within the sound discretion of the trial judge, and his judgment as to the amount of the fee will not be reversed on appeal unless it is clearly shown that discretion has been abused. Burgess v. Burgess, 54 Ala. App. 396,309 So.2d 107, cert. denied, 293 Ala. 748, 309 So.2d 111 (1975). There was testimony from more than one attorney that a reasonable fee for the service performed by wife's attorney would be between $15,000 and $40,000. Although such a large fee may exceed the usual, it is not so much greater than that charged by counsel of the husband. We cannot find it contrary to the evidence and thus an abuse of discretion.
We briefly turn to appellee-wife's claims before we address the main issue in the case involving the manner and amount of the alimony-in-gross award.
Wife contends for the first time on appeal that the court erred in extending the period for payment of the alimony in gross beyond ten years. The basis for the contention is that such extension causes heavy taxation to the wife. We fail to find anything in the record concerning the matters related and argued in brief on the subject of such taxes. Not having been previously presented, it cannot now be considered on appeal.Brown v. Brown, 374 So.2d 332 (Ala.Civ.App.), cert. denied,374 So.2d 334 (Ala. 1979).
Wife claims the court abused its discretion in awarding her only $1,250 per month as periodic alimony. The trial court's judgment as an award of alimony is presumed correct and will not be disturbed on appeal, unless there is a clear and palpable abuse of discretion. Robinson v. Robinson,381 So.2d 637 (Ala.Civ.App.), cert. denied, 381 So.2d 641 (Ala. 1981). In reviewing the evidence we find no abuse of discretion.
Finally, we come to husband's claim that the trial court abused its discretion in the award and manner of payment of alimony in gross. The alimony-in-gross award is $302,500 — $150,000 payable in three annual installments of $50,000 beginning in December 1982, the remaining $152,500 payable in monthly installments of $1,250 beginning in December 1981.
There were accountants, C.P.A.s and others, who testified to various aspects of the *Page 298 
husband's business and assets. It is clear that in recent years the husband and a partner have made large sums of money and secured valuable capital assets. He was admittedly earning in salary at the time of trial some $5,000 net per month. In the years of 1979 and 1980 his net income exceeded $125,000 per year. His business supported his family in grand style. There was a Cadillac Seville for the wife and two other expensive automobiles for the daughter. There were boats, jewelry and furs, and expensive trips.
The husband's primary business is the building of commercial fishing boats. There are several complementary corporations doing business with one another. There are three shrimp boats owned and operated by separate corporations. However, in 1980 and subsequently, business fell off greatly and the market value of the boats and capital assets fell markedly. Only three boats are under construction as compared to forty built in 1979.
As in most cases involving businesses, their operation, income, assets and their market value, the testimony of experts in this case widely varied. The testimony as to net assets varied from approximately one and one-half million dollars to some half million dollars. However, the present net salary of approximately $5,000 per month is undisputed. It is undisputed that capital assets have decreased markedly in value. There is little or no market for shrimp boats nor income to be made from them. Within the past two years, similar businesses in Bayou La Batre have fallen from ten or more down to that of appellant and that of Reverend Moon. There are presently no contracts other than three boats under construction for Liberia. There are on hand three unfinished hulls for which the contract was cancelled. There is invested in them cost of nearly $800,000. They are heavily mortgaged to banks. Their appraised value comprises a substantial part of the assets of the husband's business. However, there is no market for them, especially in their unfinished condition. There is no evidence of capital in the personal or business accounts of the husband with which to pay the annual cash payments of $50,000 awarded the wife. The payment of $2,500 monthly in periodic and gross alimony will take some one-half of husband's salary which apparently is being paid from advances against the Liberia contract.
It is to be noted that by agreement of the parties already completed, the wife received the home, her valuable furs, her Cadillac, jewelry, all of the hoarded cash, checking and savings accounts of the total value of $49,000 and half of a monthly payment note for $40,000 — all of the agreed present value of approximately $170,000. The decree of the trial court required the husband to pay costs and some $43,000 in attorney fees and expert witness fees. The question arises — where will the husband get such cash sums? Must he sell assets of his business or increase an already heavy indebtedness? Can he do this and still produce the income to maintain the monthly payments and live?
The answer to these questions in light of the undisputed evidence must be that the husband has no such cash available in his personal estate. The evidence fails to disclose any assets other than real and personal property derived from the previous division agreement with the wife. His business assets owned jointly with others are heavily mortgaged, and consist of property items with little or no market demand. It was stated in Leo v. Leo, 280 Ala. 9, 189 So.2d 558 (1966), that equity does not require a choice between the sacrifice of capital assets or jail if an award of alimony in gross cannot be paid. To secure the cash necessary to pay approximately $43,000 in costs and attorney fees, $50,000 on December 31, 1982, $50,000 payments for the next two years and $30,000 annually in monthly payments of periodic and gross alimony would clearly require the sale or further encumbrance of business assets of greatly diminished value in a period of economic depression. Such action could possibly effect the loss of the business and the income therefrom which is calculated to presently support the husband, wife and daughter and to pay the wife $30,000 per year for the next *Page 299 
ten years, and $15,000 per year thereafter. To sacrifice the business assets of the husband to such an extent in order to add to the already sizeable estate of the wife is neither wise nor equitable.
We conclude that the award of $302,500 in gross alimony, payable as directed by the trial court, when viewed in light of the evidence is so excessive and unfair as to constitute an abuse of discretion. We therefore set aside that portion of the judgment awarding alimony in gross. We direct that the trial court enter instead a judgment directing an award to the wife of $200,000 alimony in gross as payment for the loss of her interest in the marital estate, payment of such sum to be made as follows: $150,000 to be paid in monthly installments of $1,250 each for a period of ten years, said payments to begin as may be determined by the trial court. The remaining $50,000 to be due and payable on the last day of the tenth year from the beginning of the monthly installments. Said $50,000 shall draw interest from the date of its entry in judgment at the rate of ten percent per annum until paid, the interest earned being payable yearly upon the anniversary date of the judgment. However, husband shall be granted the right to pay said $50,000, or any part thereof, with accrued interest at any time subsequent to judgment and prior to the due date. Failure to timely pay interest when due will accelerate the due date of the entire $50,000.
All other provisions of the judgment below, including the award of periodic alimony are affirmed.
The request of the wife for attorney fees on appeal is denied.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.
BRADLEY and HOLMES, JJ., concur.