BRADLEY, Judge.
This appeal concerns a custody dispute between the mother of three children and the children’s paternal grandparents.
Glenn and Brenda Handley were married and lived for a number of years in Arab, Alabama. They had three minor daughters, Tonya, Christy and Summer. In January of 1981 the couple separated and Glenn moved in with his parents, Bobby and Marlene Handley. Shortly thereafter Glenn committed suicide.
After their father’s death, the three girls continued to live with their mother. On August 21, 1981 Bobby and Marlene Hand- *164 ley petitioned for permanent custody of their grandchildren, arguing that it was not in the children’s best interests to remain with their mother. A guardian ad litem was appointed to represent the interests of the children.
On November 80, 1982 the court ordered Mr. and Mrs. Handley, the three girls, and Brenda and her new husband, Jim Richards, to submit to a psychological examination. The examinations were conducted by the court-appointed psychologist and he testified in open court about his findings.
On December 13, 1982 Brenda Handley Richards counterclaimed for . a reasonable attorney’s fee. The Handleys objected to the filing of the counterclaim and amended their original complaint, asking that they be awarded visitation rights with their grandchildren.
After an ore tenus hearing on December 14, 1982, the court denied the Handleys’ request for custody and visitation rights, awarded $7,928 in attorney’s fees to the mother, and ordered the Handleys to pay the court costs, which included a guardian ad litem fee of $1,100.
After the denial of their posttrial motions, the Handleys appeal.
In brief the Handleys argue that the trial court erred in not giving them custody of their grandchildren or visitation with them, in not admitting into evidence a sermon given by Jim Richards, in excluding testimony as to an alleged adulterous relationship between Brenda Handley and Jim Richards, in sustaining objections to questions asked during trial, and in awarding attorney’s fees to Brenda.
In Alabama the welfare and best interests of a child are always the fundamental inquiry in a child custody case. Pendergrass v. Watkins, 383 So.2d 851 (Ala.Civ.App.1980). Moreover, where there are conflicting claims to custody between a parent and a nonparent, the parent has the primary right to custody. Pendergrass v. Watkins, supra. The presumption is that the best interests of a child will ordinarily be served by being in the custody of its natural parent. Borsdorf v. Mills, 49 Ala.App. 658, 275 So.2d 338 (Ala.Civ.App.1973). The party seeking to overcome such presumption has the burden of convincing the trial court that the best interests of the child will be served by placing custody with that party. Willette v. Bannister, 351 So.2d 605 (Ala.Civ.App.1977).
The trial court denied the Handleys’ request for custody; therefore we conclude that the Handleys failed to convince the court that they should have custody of their grandchildren.
Brenda Handley has taken care of her children since she separated from Glenn Handley, her then husband, in January 1981. The children are well cared for, loved, and appear to be happy. The children are afraid of their paternal grandparents, the Handleys, and the oldest child stated that she did not want to live with the Handleys.
The psychologist who interviewed the children stated that the children should remain in the custody of their mother and not be required to visit with the Handleys.
Brenda married Jim Richards in September 1981 and Richards adopted the three children. It appears that the children are well cared for by Richards and they are happy living with him.
The trial court not only refused to give the Handleys custody of their grandchildren but also refused to require that the children visit with them. The Handleys contend that the trial court committed error by denying them visitation.
Paternal grandparents have no legal right to visit with their grandchildren when the natural mother has remarried and the stepfather has adopted the children. Ex parte Bronstein, 434 So.2d 780 (Ala.1983). The trial court did not commit error when it denied the Handleys visitation with their grandchildren.
The Handleys next contend that the trial court committed reversible error when it refused to admit into evidence a transcribed copy of a sermon given by Jim Richards to his church congregation. This *165 sermon concerned an adulterous relationship of a man and woman and how the congregation might deal with it.
The Handleys say that the exhibit was relevant to show Richards’ view on adultery and his fitness to be a custodian of the children. The trial court sustained an objection to the admission of the exhibit on the ground that it was irrelevant.
What is relevant evidence is a discretionary decision for the trial court and, unless the court abuses its discretion in refusing to admit proffered evidence, it will not be reversed on appeal. Costarides v. Miller, 374 So.2d 1335 (Ala.1979).
The sum and substance of the sermon was that true believers should have a forgiving heart. Such a pronouncement does not necessarily mean that the person making it condones adultery; it merely propounds that person’s view of the biblical tenets admonishing one not to pass judgment on others. The refusal to admit the tape recording and the transcription of the recording into evidence does not amount to an abuse of the trial court’s discretion.
Another issue raised by the Handleys relates to the refusal of the trial court to require answers to questions that relate somewhat to the above issue.
Questions were asked of several witnesses about statements made by Jim Richards during counselling sessions with these witnesses. The counselling sessions allegedly occurred during the time Richards was pastor of the Arab Christian’ Center. The questions attempted to elicit answers which would show Richards’ unfitness to be a custodian of the children. The answers which were sought were intended to reflect Richards’ attitude about sin and suicide, and his counselling procedure with these witnesses.
After a careful examination of the questions to which objections were made, we are not convinced that the Handleys have been substantially prejudiced by the refusal of the trial court to require answers to them. Rule 61, Alabama Rules of Civil Procedure, and Rule 45, Alabama Rules of Appellate Procedure. Garrison v. Grayson, 284 Ala. 247, 224 So.2d 606 (1969).
The Handleys’ next issue is that the trial court erred to reversal when it refused to require Brenda and Richards to testify whether they had had sexual relations prior to their marriage. The objection was based on the constitutional privilege against self-incrimination.
In Vail v. Vail, 360 So.2d 992 (Ala.1978), the supreme court held that it was reversible error to require a husband to testify about his adulterous acts over his objection based on his constitutional privilege against self-incrimination. In Howard v. Howard, 422 So.2d 296 (Ala.Civ.App.1982), we held that a husband can be required to answer questions about an adulterous affair if the acts occurred beyond the one-year statute of limitations.
In the case at bar the record shows that Brenda and Jim Richards had been married for more than one year prior to the trial; therefore any testimony about their sexual relations would have related to instances that occurred beyond the one-year statute of limitations for adultery. Consequently, Brenda and Richards were not entitled to the privilege against self-incrimination. Howard v. Howard, supra.
Did the trial court commit reversible error by not requiring Brenda and Jim Richards to testify about sex acts prior to their marriage? See Rule 61, A.R.Civ.P., and Rule 45, A.R.A.P.
If the evidence sought is relevant and material to the issues being litigated, the losing party may very well argue that he has been prejudiced by the refusal to admit the testimony being sought.
The sought-after testimony relating to sexual acts by Brenda and Jim Richards would be relevant and material to the issue of the fitness of the mother to retain custody of her children. We have said that sexual misconduct on the part of a parent who has custody of her children is a factor for consideration by the court in determin *166 ing the fitness of that parent to retain custody of her children, so long as it is shown that such conduct has adversely affected the best interests of the children. Nesmith v. Nesmith, 419 So.2d 247 (Ala.Civ.App.1982).
Had the witnesses been required to answer the question about sexual acts prior to their marriage, and assuming that they had answered in the affirmative, we do not find that evidence of this factor would have resulted in a decision for the Handleys.
The evidence strongly shows that the mother and the adoptive father love the children and properly care for them. The mother does not work and devotes her full time to the care and nurture of her children. On the other hand, the evidence is substantial that the children fear their grandparents and do not even want to visit them. Moreover, the psychologist testified that it would be detrimental to the children’s welfare to require them to visit the grandparents at this time.
Based on all of the other evidence in the record, we do not find that the Handleys’ rights have been substantially prejudiced by the refusal to require Brenda and Jim Richards to testify about sexual acts prior to their marriage. Furthermore, we consider our conclusion to be strengthened by the fact that in other places in the record it appears that Brenda testified that the only time she had taken a trip alone with Richards they did not have sexual relations. She further stated that the few times that he stayed overnight at her apartment he slept on the couch and did not sleep with her. Richards confirmed this course of conduct in his testimony. See Sweatman v. Federal Deposit Insurance Corp. as Receiver for Southern National Bank, 418 So.2d 893 (Ala.1982).
Finally, the Handleys say that the trial court wrongfully required them to pay Brenda an attorney’s fee. They contend there is no authority for a trial court to award a natural parent an attorney’s fee for defending a child custody action brought by the paternal grandparents.
In Alabama attorneys’ fees are recoverable “only where authorized by statute, when provided in a contract or in an equitable proceeding where the efforts of an attorney creates a fund out of which fees may be paid.” Shelby County Commission v. Smith, 372 So.2d 1092 (Ala.1979), quoting State ex rel. Payne v. Empire Life Insurance Co. of America, 351 So.2d 538 (Ala.1977), cert. denied, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978); and Parker v. Jefferson County Commission, 347 So.2d 1321 (Ala.1977).
In the present case there is no statute authorizing the payment of attorney’s fees to the mother by the grandparents, and there has been no fund created from which such fees can be paid. The only other method by which attorney’s fees can be awarded is when so provided by contract. No such contractual relationship exists between the mother and the grandparents in the present case.
Attorney’s fees have been awarded to the mother in child custody cases, but in those cases, the father has been the party required to pay the fees, the authority for the award arising from the marital relationship. Torme v. Torme, 251 Ala. 521, 38. So.2d 497 (1949).
Since there has been no marital relationship between the parties, no statute authorizing the award of attorney’s fees, and no fund created for such purpose, we hold that the trial court had no legal basis for requiring the Handleys to pay the mother an attorney’s fee. This aspect of the decree is reversed.
The mother’s request for an attorney’s fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR ENTRY OF JUDGMENT CONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and HOLMES, J., concur.