Following lengthy oral proceedings, the trial court divorced the parties and effected an order for a property division, which among other things, provided that the wife receive one million dollars ($1,000,000) in cash. It awarded the wife two hundred thousand dollars ($200,000) in cash as alimony in gross. It reserved the right to award the wife periodic alimony until the husband made the cash awards. It awarded the wife custody of the parties' ten-year-old daughter; ordered the husband to pay $6,000 per month in child support and all medical and educational expenses incurred by the child until graduation from high school; ordered the husband to maintain a $1,500,000 life insurance policy with the wife as beneficiary for the benefit of the child; ordered the husband to maintain a disability insurance policy that would generate $6,000 per month for the benefit of the minor child until majority or until age 25 if she continues her education; ordered the husband to submit to HIV (Human Immunodeficiency Virus) blood testing every six months for four years; and awarded the wife an attorney's fee of $113,750 and expenses of $14,025.76. The divorce was granted on the grounds of the husband's adultery. The husband appeals. The wife cross-appeals.
The record reflects that the parties were married in 1977, and shortly afterwards the husband graduated from medical school. The wife had a child from a previous marriage that lived with the parties. As the husband pursued his medical residency, the wife worked full time as an executive secretary, a teacher, and in public relations. The parties' incomes were comparable during that time.
In 1981 the parties moved to Jasper, Alabama, for the husband to establish an ophthalmology practice. The parties' child was born the same year. The wife has not been employed since 1981. She has, however, been instrumental in the establishment and the continued growth of the husband's practice. She has a college education and at one point was enrolled in a master of business administration program.
In 1984 the husband was admitted to a treatment center for cocaine abuse. The *Page 696 
wife was very supportive during the husband's recovery.
In 1990 the wife learned that the husband was having extramarital affairs. The marital discord began at that time. At trial the husband admitted to having five such affairs. Four women openly testified at trial concerning their sexual relationships with the husband.
The husband had a twenty-year-old girlfriend at the time of the hearing that he had been seeing for approximately two years. The girlfriend testified that her last sexual encounter with the husband was two days prior to her testimony at trial. She testified that he has given her gifts and has taken her on trips with him.
A certified public accountant, testifying on behalf of the wife, prepared and testified to a reconciliation statement, using income tax returns to reflect the parties' "gross income" as defined by Rule 32, Alabama Rules of Judicial Administration. The reconciliation statement showed a "gross income" of $904,935 in 1988, of $1,032,381 in 1989, and of $789,033 in 1990. The CPA estimated that the parties' total assets equaled approximately $4,300,000, with $1,046,119 in liabilities, leaving a net estate of $3,254,319.
The evidence indicated that the minor child of the parties had a separate income in 1990 of $21,000. This income was generated from a subchapter S corporation (an optical business adjacent to the husband's office) and interest income from a trust set up for the benefit of the minor child and the wife's child by her previous marriage. The trust consists of $106,000 in a Vanguard account, $25,000 in a Merrill Lynch account, approximately $8,000 in a checking account, a Nissan automobile, office equipment that is rented to the husband's medical practice, and a condominium that is rented by the husband's mother.
Prior to the hearing the wife and minor child moved to Birmingham, Alabama. The child is enrolled at Altamont School, a private school. The wife testified that the monthly living expenses for her and the minor child would be $17,410. Such monthly expenses include a $4,500 mortgage on the purchase of a $350,000 home and a $2,800 clothing allowance.
As a first issue on appeal the husband asserts that the trial court erred in its order for child support and support-related obligations. Specifically, the husband questions the following support-related provisions of the final decree: (1) $6,000 per month child support; (2) health insurance for medical, dental, prescription medication, and orthodontic needs of the child; (3) all medical needs of the child not covered by insurance; (4) all educational expenses of the child through her high school graduation; and (5) the maintenance of the life and disability insurance policies. He insists that when taken collectively, his support obligations are punitive in nature and have no correlation to the needs of the minor child. He asserts that the trial court failed to take into account the wife's substantial property award and the child's separate estate, which he provided, when entering its order for support.
The husband's gross monthly income surpasses the uppermost level of the child support schedule found in Rule 32, A.R.J.A. Therefore, pursuant to Rule 32(C)(1), A.R.J.A., the amount of child support lies within the trial court's discretion. Such discretion, however, is not unbridled. It must relate to the reasonable and necessary needs of the child.
It could probably be said that the child is fortunate to have a parent with sufficient income to provide to her so much material wealth. The question presented in this instance is whether she would be fortunate if awarded more than she could reasonably need or use — merely because the husband has the income to pay it.
The child is ten years old and has led a life of luxury for much of her life. Such luxury has included an extravagant primary residence, a lake home, a beach condominium, thoroughbred horses, modeling, voice and acting lessons, summer camp, and private school. We doubt that most of these things were provided because of her wishes, but came from the desires of her parents. The wife insists that the child *Page 697 
should not be deprived of any luxuries because "she hasn't done anything to deserve any less." The wife testified that it would be necessary to purchase a home in the range of $350,000 in order for the child to be raised in comparable surroundings. She calculates that the mortgage on such a home would be approximately $4,500 per month (the mortgages on all three of the parties' properties never equaled $4,500). She further insists that it is very important for the child to be a member of a country club, attend private schools, and receive all the extras that money might provide.
We are impressed with the wife's statement that the child should be awarded a sum sufficiently large to provide all the luxuries which she has previously enjoyed because "she deserves no less." Such a demand gives pause to the thought — to whose benefit would the large award also inure. The wife has cross-appealed the award of $6,000 per month ($72,000 per year, tax free, 26 U.S.C.A. § 71(c) (West 1988)), contending it is insufficient.
It is evident that the award of $72,000 per year is far from the total obligation placed upon the husband for the benefit of the child. By the decree he is responsible for all of her reasonable medical, dental, health, and educational needs, including private school tuition and room and board costs if attending school away from the home of the wife. He is to secure and maintain a life insurance policy on his life for an amount payable at not less than $1,500,000. He is also ordered to secure a policy of disability insurance which would provide an amount sufficient to pay the $6,000 per month child support. The cost of these insurance policies is not shown in the record. It takes no expert to know that the cost must be substantial if such policies are obtainable. It is evident, therefore, that the liability imposed on the husband for the support of the child is far greater than the ordered $72,000 per year.
This court has been in existence for over 22 years. This writer has been a member of this court since its creation. The award of child support in this case far surpasses any we have experienced. We have digested all of the child support cases that have been appealed to the appellate courts of this state. None has been found containing child support orders for any number of children (more than one) which approach that before us in this case.
It is evident from the record that the husband has provided well for his child without court order. He has established a trust for her benefit and the benefit of the wife's child by a prior husband. (He has apparently treated that stepdaughter as his own and is presently sending her to college.) He has given each child a 24% interest in a profitable optical business. That business returned a net profit of $40,000 in 1990. The income from the ordered support and from the business and trust would approach or exceed $100,000 per year. Recognizing and subscribing to the principle that the amount of child support to be provided is a matter within the discretion of the trial court, we yet find that the order in this case so far exceeds the reasonable needs of the child as to constitute an abuse of discretion and perhaps appears to be a punishment upon the husband for his conduct against the marriage. This court recognizes the despicable malfeasance of the husband in the marital relationship. However, an excessive order for child support is not a basis for punishment for such conduct. He has not stinted in providing material support for the child during the marriage.
We find that the trial court abused its discretion in its award of child support and support-related obligations. The award for $6,000 per month is, therefore, set aside, together with the provisions requiring maintenance of life and disability insurance policies, particularly that which requires that said policies remain in force during continuing education or until the child reaches the age of 25 or marries.Whitten v. Whitten, 592 So.2d 183 (Ala. 1991).
The husband contends that the trial court's award as to educational expenses is overly broad and subject to abuse by the wife.
The judgment provides only that the husband provide "necessary and reasonable" *Page 698 
educational expenses. If in the future, the wife makes unreasonable financial decisions regarding the child's education, the husband may always return to the trial court for a reconciliation of the educational expenses. Lee v. Lee,518 So.2d 137 (Ala.Civ.App. 1987). At present, the husband is satisfied with the school that the child attends.
The husband asserts that the trial court erred in its award of an attorney's fee. He insists that the wife was capable of assuming the responsibility for the fee in view of the substantial judgment awarded to her.
In determining the assessment of attorney fees against the husband, the court was at liberty to consider the fault of the husband in bringing about the suit and the necessity of retaining counsel. Rosser v. Rosser, 355 So.2d 717
(Ala.Civ.App. 1977). The granting of an attorney's fee in a divorce case rests within the sound discretion of the trial court. Its judgment as to the amount of the fee will not be reversed on appeal unless it is clearly shown that discretion has been abused. Howard v. Howard, 422 So.2d 296 (Ala.Civ.App. 1982).
The trial court set out in its decree in detail the basis for the award to the wife. There was evidence of the time and effort spent by her attorney in discovery, preparation, and trial. That evidence was not materially discredited. We recognize that the award of $113,750, plus expenses, is far more than the usual case. However, this is not a usual case.
The trial court properly considered the factors enumerated inRosser. The court's findings are supported by the record. We find no abuse of discretion.
The husband asserts that the court's order concerning HIV testing by the husband was an abuse of discretion.
The wife first raised the HIV testing issue in her posttrial Rule 15(b), Alabama Rules of Civil Procedure, motion. The husband objected to the post-trial motion, noting that no evidence concerning this issue was ever presented at trial.
The wife asserts that the relief sought in the posttrial motion conformed to the evidence because evidence was adduced that the husband had unprotected sex with several females. She suggests that the trial court could have taken judicial knowledge of the fact "[t]hat AIDS (Acquired Immune Deficiency Syndrome) is caused by the HIV virus"; "[t]hat the HIV virus is transmitted by practicing 'unsafe sex' "; and "[t]hat treatment for AIDS should be begun as soon as possible." She insists in brief that the relief granted was proper because "[a] positive HIV test by the husband, would then put the wife on notice that she may also test HIV positive, and at that point, she could seek testing on her own."
Rules 15(b) and 54(c), A.R.Civ.P., allow a court to render judgment on a matter that has been tried either with the express or implied consent of the parties, even though the matter was not raised in the pleadings. These rules, however, do not sanction the granting of nonrequested relief where it appears that a party's failure to ask for particular relief or to present evidence in support of the particular relief has substantially prejudiced the opposing party. Kirkland v.Kirkland, 575 So.2d 1154 (Ala.Civ.App. 1991).
An involuntary blood test constitutes a search and seizure within the scope of the Fourth Amendment. Skinner v. RailwayLabor Executives' Ass'n, 489 U.S. 602, 109 S.Ct. 1402,103 L.Ed.2d 639 (1989). The Fourth Amendment does not proscribe all searches and seizures but only those that are unreasonable.Skinner. The determination of the standard of reasonableness governing any specific class of searches and seizures requires balancing the need to search against the invasion which the search entails. New Jersey v. T.L.O., 469 U.S. 325,105 S.Ct. 733, 83 L.Ed.2d 720 (1985).
The issue of HIV testing was not tried by the express or implied consent of the parties. The record is devoid of any evidence concerning the issue. In fact, there was no indication that the issue was being considered. There was no evidence presented *Page 699 
for the trial court to consider and make a balanced decision regarding the reasonableness of the wife's request for HIV testing.
We find that the wife's failure to plead and to present evidence in support of her requested HIV testing was prejudicial to the husband because the husband was not allowed to present evidence on the subject. An ordered involuntary blood test must be based on more than marital infidelity and a wife's sense of "embarrassment" for having to submit to HIV testing. See Anne D. v. Raymond D., 139 Misc.2d 718,528 N.Y.S.2d 775 (N.Y. Sup. Ct. 1988); Doe v. Roe, 139 Misc.2d 209,526 N.Y.S.2d 718 (N.Y. Sup. Ct. 1988).
Whether the court may order HIV testing in a divorce case raises a constitutional question of first impression in this state. It is an issue which may not be presented merely incidentally. We do not decide that question here.
The husband asserts that the trial court erred in ordering him to operate the optical business in a profitable manner.
The parties are officers and shareholders in the optical business, which is located adjacent to the husband's practice. The parties' child and the wife's child are also shareholders. In 1990 the optical business generated approximately $40,000 in profit. The court ordered that the parties were to "continue to use their best efforts to operate the same in a profitable manner." The husband insists that such an order is a form of servitude and violative of his constitutional rights.
We find no reversible fault in that requirement. It is nothing more than direction to continue to operate a profitable business in which all parties, including the child, have substantial interests. The parameters of the order is "best effort."
In her cross-appeal the wife asserts that the trial court abused its discretion in its division of the marital property, in its award of alimony in gross, and in its failure to award periodic alimony.
The matters of which the wife complains — the award of alimony and the division of property — are committed to the discretion of the trial court and will not be reversed absent a showing that it has abused its discretion or that its determination is plainly and palpably wrong. Robbins v.Robbins, 537 So.2d 964 (Ala.Civ.App. 1988).
To recap the order, the wife is to receive: $200,000 immediately in cash; $1,000,000 in a cash property division (not taxable) together with five and one-half pages of personal property including cars, boats, horses, furniture, clothes, etc.; one-half of all joint accounts; her present 26% interest in the optical business; three years of full health coverage, including dental and prescription drugs; and she is to be relieved of all debts and tax liabilities. It appears that the wife has been substantially provided for in the decree. We find no abuse of discretion in her treatment.
The judgment of the trial court pertaining to child support and support-related obligations, particularly the husband's maintenance of the insurance policies, is reversed and remanded to the trial court for reconsideration in light of further evidence of the reasonable needs of the child and the probable cost to the husband of securing the required insurance policies. The court is also directed to consider the effect of the division of property ordered as it affects the gross income of both parties. The provision of the decree regarding HIV testing is reversed. The remainder of the decree is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
All the Judges concur. *Page 700