664 So.2d 908 (1995)
B.R.L.
v.
STATE of Alabama ex rel. K.H.S.
AV93000732.
Court of Civil Appeals of Alabama.
February 10, 1995.
Rehearing Denied March 31, 1995.
Certiorari Denied June 30, 1995.
*909 J. Michael Manasco, Montgomery, for appellant.
Cynthia T. McDowell of McDowell, Faulk & McDowell, Prattville, for appellee.
Stephen M. Langham of Langham & Fuller, Prattville, guardian ad litem.
Alabama Supreme Court 1940987.
SAM A. BEATTY, Retired Justice.
B.R.L. appeals from an adverse judgment in a paternity/child support action. The evidence was presented ore tenus.
Having reviewed the record and having considered the parties' arguments, we conclude that the judgment is due to be affirmed. The pertinent portions of the judgment are quoted here:
"This matter coming to be heard before this Court on the Petition filed by [K.H.S.] to establish the paternity of [J.R.S.], a minor child, to establish child support payable by the father, [B.R.L.]; to establish child support arrearage and a judgment for reasonable expenses associated with the pregnancy and confinement, along with other matters....
"Testimony and evidence were presented by two witnesses, namely, the Petitioner, [K.H.S.], and the Respondent, [B.R.L.]. Upon consideration of the ore tenus testimony given in response to direct and cross-examination, the questioning of the guardian ad litem, the demeanor and mannerisms of each witness and exhibits admitted into evidence, the Court finds the following with regard to facts in this case:
"[J.R.S.] was born as the result of the relationship of the petitioner, [K.H.S.], and the Respondent, [B.R.L.], as stipulated by the parties in July of 1993. [K.H.S.] found that she was pregnant in early January of 1992 and advised [B.R.L.] of her condition. At that time, [K.H.S.] was employed by Carraway Hospital in Birmingham, Alabama as a nurse and [B.R.L.] was practicing medicine at the same hospital. [K.H.S.] did not have any medical insurance coverage for the pregnancy. [K.H.S.] left employment at Carraway to accept employment at U.A.B. Hospital in Birmingham, where insurance was obtained by [K.H.S.] with no penalty for a preexisting condition (i.e., the pregnancy). [K.H.S.] had a problematic pregnancy and was forced to restrict her working hours due to health considerations associated with the pregnancy. [K.H.S.]'s problem pregnancy resulted in her being bed-ridden for quite some time prior to delivery. [J.R.S.] was born on August 18, 1992. [K.H.S.] was not released by her doctor to return to work until October 21, 1992. Due to the pregnancy and confinement, [K.H.S.] incurred expenses associated with uninsured medical expenses, increase in insurance premiums, living expenses, loss of income and other expenses, including personal loans, associated with the pregnancy and confinement. Testimony by [K.H.S.] was that from early January 1992 through October 21, 1992, [B.R.L.] gave her a total of One Thousand Seven Hundred and No/100 ($1700.00) Dollars. [B.R.L.] testified that he believed he gave [K.H.S.] a total of $2500.00; however, [K.H.S.]'s testimony of $1700.00 may have been correct. Giving the Respondent the benefit of the doubt, he paid a total of $2500.00 to [K.H.S.] during her pregnancy and confinement. [K.H.S.] testified that she used part of the $1700.00 paid as partial payment to her doctor due to her being initially a private-pay patient. It is the opinion of the Court that [B.R.L.] has received credit for the amount he had paid associated with the pregnancy and confinement.
"The evidence established that from the date of [J.R.S.]'s birth, being August 18, 1992, until the Court entered the pendente lite order of July 8, 1993, [B.R.L.] paid nothing toward the support and maintenance of the child. The Court calculates that approximately 11 months passed without any support contribution by the Respondent. During these 11 months, [K.H.S.] and her family bore the total expense for the maintenance and support of the minor child. The Court is not impressed with the fact that only after order by this Court, did the Respondent contribute any monies toward the support and maintenance of the child.

*910 "Testimony and evidence were taken as to the child's needs and standard of living as well as the ability of the parents to pay. The evidence established that prior to the birth of [J.R.S.], [K.H.S.]'s monthly living expenses were approximately $1600.00. The evidence further established that to provide the minor child with a middle-income life-style, the monthly living expenses will be approximately $5,678.50, of which $1600.00 is associated with the life-style of the Petitioner. The Court further finds that the Respondent is a medical doctor and dentist, earning approximately $396,000.00 per year. The Court was not impressed with the Respondent's testimony that his monthly living expenses for 1994 are $6441.00 per month and that his monthly living expenses for 1993, including paying all the expenses of his other child to attend Auburn University, were $5000.00 per month.
"The evidence showed that the Respondent had approximately $293,000.00 ($24,442.15 per month) actual spending cash, after taxes, in 1993 and that the Respondent testified he saved approximately $30,000.00-$40,000.00 ($3,333.33 per month) in 1993. Had the Court accepted the Respondent's testimony of $5000.00 per month of living expenses for 1993, after payment of monthly living expenses, monthly taxes and monthly savings, Respondent had $16,108.82 per month in discretionary monies in 1993. This calculation was agreed to by the Respondent and the Respondent admitted that the $16,108.82 discretionary monies had been spent monthly and he could not account for its expenditure. It was apparent from the testimony and evidence that the Respondent and his family (consisting of a wife and 19-year-old child) live a very lavish life-style. Vacations to Russia, Europe, Mexico, Colorado, Austria and other places had been enjoyed by the family in the past few years. Further, the Respondent owned a lavish residence in ... Birmingham, Alabama along with a farm in Chilton County, Alabama. The indebtedness on both of these properties was less than $150,000.00 and $91,000.00 of the indebtedness was established after these proceedings were filed. The farm in Chilton County, Alabama had been improved substantially with the inclusion of a large pond, barn, tractors and other improvements. The Respondent's 19-year-old daughter was a student at Auburn University, all her expenses were paid by the Respondent which included the cash purchase of a $17,000-$18,000 automobile in late 1993. [B.R.L.] has no liens on his automobiles, business nor any personal loans or secured indebtedness other than the $150,000.00 on real property and debt for credit card purchases each month.
"The evidence further established that the minor child had been quite sick since his birth. These illnesses had interfered greatly with the Petitioner's employment. Petitioner is currently unemployed and was living with her parents, mostly at their expense, and raising the child. Respondent's wife had not been employed since 1984 though she did operate an antique business, which had produced no income in quite some time. The Court is of the opinion that the sole responsibility for rearing this child will lie with the Petitioner without any involvement by the Respondent. This opinion is based on the testimony of the Respondent himself. The Court is greatly troubled that this child will grow up without a father, due to the desires of the father himself. The Court is of the opinion that this child is entitled to the love and attention of both his parents; however, the Court is without authority to force the Respondent to have a relationship with his child. The Court recognizes the great responsibility that lies with the Petitioner and is of the opinion that this child is in need of all of the love, attention, contact, time and support the Petitioner can possibly offer.
"The Court was not impressed by [B.R.L.]'s lack of concern nor his desire to be uninvolved with the minor child. [B.R.L.]'s testimony was that the child was not considered a member of his family; the child was not welcome in his home; [B.R.L.] did not anticipate any visitation with the child; [B.R.L.] did not care nor want his name on the child's birth certificate *911 and [B.R.L.] was not considering any involvement with the child or his development. [B.R.L.]'s testimony and demeanor led the Court to reach the conclusion that [B.R.L.]'s involvement with the child would be no more than a monthly child support payment. As properly stated by the Petitioner, [K.H.S.] will be both father and mother to this minor child and will receive no assistance, help, encouragement or involvement from [B.R.L.] in rearing his child. [B.R.L.] appeared to be undisturbed by his position of noninvolvement with the child, though [B.R.L.] did reflect that he could not answer what effect his position would have on this child.
"Based upon the evidence presented, both through direct and cross-examination of the witnesses and the questioning by the guardian ad litem, the exhibits admitted, the argument of the attorneys, the mannerisms, demeanor of the witnesses and the applicable statutes and case law, the Court finds, [based on ore tenus evidence], as follows:
"1. [B.R.L.] is the natural, biological father of the minor child, [J.R.S.], born August 18, 1992 to [K.H.S.]. In accordance with Section 26-17-189, Code of Alabama, 1975, the Registrar of Vital Statistics of the State of Alabama is ordered to prepare a new certificate of birth consistent with the findings of this Court being the placement of the father's name on the certificate and the Registrar shall substitute the new certificate for the original certificate of birth.
"2. [B.R.L.] is ordered to pay to [K.H.S.] the sum of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars per month for the support and maintenance of the parties' minor child, [J.R.S.]. Said payment shall be due and payable on the first day of each month, commencing July 15, 1994, and continuing each month thereafter until the minor child reaches the age of majority, dies, marries, becomes self-supporting or until further ordered by the Court. The Court specifically finds that the combined income of the parties far exceeds the statutory schedule for determination of child support and, therefore, the statutory schedule, as provided by Rule 32, Ala.R.Jud.Admin., as amended, does not apply. In making this award, the Court has given consideration to the basic needs of any child as well as the standard of living this child would have enjoyed had [B.R.L.] elected to make the child a member of his family and the parents' ability to pay child support. A wage withholding order shall immediately be issued to Respondent's employer, ... and all payments shall be collected and paid by said employer to Mr. Fred Posey, Circuit Clerk, Post Office Box 126, Prattville, Alabama 36067 for distribution by the Circuit Clerk to the Petitioner, [K.H.S.], .... Should the Respondent change employment, the Respondent shall immediately notice the Circuit Clerk of the name and address of his new employer.
"2. For the eleven months of nonsupport, being from August 1992 through June 1993, the Court orders that Respondent, [B.R.L.], pay to Petitioner, [K.H.S.], the sum of Thirty-eight Thousand Five Hundred and No/100 ($38,500.00) Dollars, within one hundred twenty (120) days of the date of this order. If said payment is not made within said one hundred twenty (120) days, the Clerk shall issue a judgment against Respondent for said amount, for which execution may issue. Further, under the Pendente Lite Order of July 8, 1993, the Court ordered that should the child support award exceed the $1500.00 awarded therein, the Respondent would pay to the Petitioner the difference awarded during the months of pendente lite support. Therefore, the Respondent, [B.R.L.], shall pay to the Petitioner, [K.H.S.], the sum of $24,000.00 ($3500.00 per month less $1500.00 per month = $2000.00 per month × 12 months) within thirty (30) days of this order. If such payment is not made within said thirty (30) days, a judgment shall be issued against the Respondent by the Clerk, for which execution may issue.
"3. For the reasonable expenses associated with the pregnancy and confinement, the Court orders the Respondent, [B.R.L.], to pay to the Petitioner, [K.H.S.], the sum of Thirty-four Thousand Three Hundred *912 Thirty and 24/100 $34,330.24) Dollars. If such payment is not made within said ninety (90) days, a judgment for said amount shall be issued against the Respondent by the Clerk, for which execution may issue.
"4. The Respondent, [B.R.L.], is ordered to provide and pay for insurance coverage insuring his life in the amount of $500,000.00 with the minor child named irrevocable beneficiary thereof, until the obligation to provide pre-majority support and/or post-majority support is terminated or until otherwise ordered by the Court. The Respondent is ordered to provide the Petitioner with yearly evidence of the existence of such insurance, on the anniversary date of this Order. The Respondent shall not make any loans against or hypothecations of said coverage and should such insurance not be in existence at the time of Respondent's death, the minor child shall have a lien against the Respondent's estate in the amount of $500,000.00.
"5. The Respondent, [B.R.L.], is ordered to provide full health insurance coverage on behalf of the minor child and shall provide evidence of such insurance within ten (10) days of this order and, thereafter, shall annually provide evidence of such insurance to the Petitioner, on the anniversary date of this Order. [B.R.L.] is further to provide the Petitioner with an insurance card, claim forms and other means by which Petitioner can use the insurance on behalf of the minor child. The Respondent, [B.R.L.], shall pay all uninsured medical, doctor, dental, optical, orthodontic and prescription drug expenses incurred on behalf of the minor child. The Petitioner shall provide evidence of such expense to the Respondent and the Respondent shall make payment to the Petitioner for such expenses within thirty (30) days thereafter. Should the insurance company provided by the Respondent refuse or fail to correspond with the Petitioner or pay the covered medical expenses, such expenses shall be considered as `uninsured' and shall be paid to the provider of services or the Petitioner shall be reimbursed within thirty (30) days of notice to Respondent of nonpayment.
"6. For the attorney fees incurred by the Petitioner, for the services of Cynthia T. McDowell and J. Robert Faulk, of McDowell, Faulk and McDowell, Respondent, [B.R.L.] shall pay to said McDowell, Faulk and McDowell the sum of $13,508.20 within thirty (30) days of the date of this order. If such payment is not made within said thirty (30) days, a judgment shall be issued against the Respondent, in favor of the Petitioner, by the Clerk, for which execution may issue.
"7. For the guardian ad litem fees for the services of Stephen R. Langham, the Court assesses such fees in the amount of $4,000.00 and orders the Respondent, [B.R.L.], to pay said $4,000.00 within thirty (30) days of this order. If payment is not made within said thirty (30) days, a judgment shall be issued against the Respondent, in favor of the guardian ad litem, by the Clerk, for which execution may issue.
"8. For the attorney fees incurred for the services of Petitioner's initial attorney, Thomas R. DeBray, the court assesses such fee in the amount of $2,000.00 and orders the Respondent, [B.R.L.], to pay said amount within 60 days. If payment is not made within said 60 days, a judgment against Respondent, in favor of Thomas R. DeBray, shall be entered by the Clerk, for which execution may issue.
"9. For the guardian ad litem fees for the services of George P. Walthall, Jr., the Court finds the initial appointment was inappropriate; however, the Court finds the services rendered by George P. Walthall, Jr., were valuable, reasonable and beneficial to the minor child and awards a fee to said George P. Walthall, Jr., in the amount of $3,559.10 and orders the Petitioner to pay said $3,559.10 within thirty (30) days of this order. If payment is not made within said thirty (30) days, a judgment against Petitioner and in favor of George P. Walthall, Jr., shall be entered by the Clerk, for which execution may issue."
This court need add only the following:
Because the trial court heard ore tenus evidence, its judgment is entitled to a *913 presumption of correctness. Wester v. Wester, 500 So.2d 1106 (Ala.Civ.App.1986).
The gross income of this noncustodial father having been established as exceeding the highest level of income provided under Rule 32, Ala.R.Jud.Admin., the trial court was entitled to use its discretion in determining the level of child support due the child from the father. Rule 32(C)(1), Ala.R.Jud.Admin.; Comment, Rule 32; Anonymous v. Anonymous, 617 So.2d 694 (Ala.Civ.App.1993).
Under the evidence, the trial court's award of $3,500 per month for the support and maintenance of the minor child was not plainly or palpably wrong. Ex parte University of South Alabama, 541 So.2d 535 (Ala. 1989); Anonymous v. Anonymous, 631 So.2d 1030 (Ala.Civ.App.1993); Morrison v. Kirkland, 567 So.2d 363 (Ala.Civ.App.1990).
The award representing retroactive child support was reasonable under the circumstances. § 26-17-14(e), (f), Ala.Code 1975.
The trial court's order to the father to provide $500,000 of insurance on his life with his infant son as beneficiary was reasonable under the facts. Grimes v. Grimes, 424 So.2d 1317 (Ala.Civ.App.1982).
The trial court ordered the father to pay $2,000 in attorney fees to the mother's initial attorney. The attorney's claim contained a general description of the attorney's representation, without any specific time schedule or record. Based upon the record, this court cannot hold that such an award was unreasonable. § 26-17-17(c), Ala.Code 1975. Kennedy v. Kennedy, 517 So.2d 621 (Ala.Civ.App.1987), cited by the father, is distinguishable on the facts. See Howard v. Howard, 422 So.2d 296 (Ala.Civ.App.1982) (trial court's judgment on the amount of attorney fees not reversible on appeal absent showing of abuse of discretion).
The award of $13,508.20 in attorney fees to the mother's present attorneys was not an abuse of discretion. § 26-17-17(c), Ala.Code 1975. This claim was documented by a chronological billing record which was complete up to, and including, work on a post-judgment memorandum for the trial court. This court finds the award reasonable.
The mother's attorneys request fees for their services in regard to this appeal. The mother's attorneys are awarded $2,000 for their services on appeal, that fee to be paid by the father.
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
THIGPEN, YATES, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., dissents.