701 So.2d 4 (1996)
Holly A. KENT
v.
Jerald D. GREEN.
2940926.
Court of Civil Appeals of Alabama.
November 15, 1996.
Rehearing Denied January 10, 1997.
Certiorari Quashed August 15, 1997.
David L. Thomas, Huntsville, for appellant.
William K. Bell of Lammons, Bell & Rhodes, Huntsville, for appellee.
Alabama Supreme Court 1960683.
THIGPEN, Judge.
This divorce case concerns the issue of custody.
In December 1994, Jerald D. Green (Jerald) filed for a divorce from Holly A. Kent (Holly), alleging incompatibility. Holly answered and counterclaimed for divorce, alleging that Jerald had committed violence on her person and that she feared future violence from him. She also filed a motion for a temporary restraining order which was granted on December 20, 1994. On March 23, 1995, following four days of receiving ore tenus evidence, the trial court divorced the parties on the ground of incompatibility and, *5 inter alia, awarded Jerald custody of the parties' two-year-old daughter, subject to Holly's visitation. Holly's post-judgment motion was denied and she appealed.
Holly challenges whether the trial court erred by awarding custody of their daughter to Jerald.
The record reveals that at the time these parties married in March 1991, each had one child from a previous marriage. The parties' child was born in November 1992. Jerald testified that he has a bachelor of arts degree in psychology and a master's degree in administrative science, both from the University of Alabama in Huntsville. Holly asserted that she has a bachelor of arts degree from Louisiana State University in New Orleans. The trial court unsuccessfully attempted to verify Holly's assertions regarding other degrees and coursework. Jerald testified that he has worked for the United States Government as a procurement and production officer since 1979. Holly testified that she has had several jobs since 1990.
There was evidence that underlying problems in the marriage were linked to Holly's relationship with Jerald's daughter from a former marriage (other daughter), and the resulting impact of that relationship on the family unit. It appears of record that in March 1994, those problems prompted an incident involving violence, when Jerald was awakened by Holly at approximately midnight because Holly wanted to discuss some unsettled issues concerning the other daughter. Initially, Jerald advised Holly that he wanted to sleep, and that it was too late to discuss the matter. After Holly left the room and went downstairs, Jerald reconsidered, then went downstairs to talk with her. During that discussion, Jerald lost his temper and choked Holly. The attack resulted in Holly's hospitalization and Jerald's arrest. Although Jerald was not prosecuted, he agreed to undergo psychological counselling as part of a deferred prosecution program. Jerald and Holly began counselling together; however, Holly stopped going and Jerald has continued.
On appeal, Holly argues that the violent incident supports her position that the trial court erred by awarding custody of their daughter to Jerald. The evidence regarding this incident is undisputed, and it is clear that the incident was directed at Holly, not the child. The therapist testified regarding Jerald's progress and stated that Jerald is unlikely to be violent in the future. That same therapist testified that Holly had psychological problems that were likely to deteriorate without treatment, and that Holly had expressed opposition to treatment. The therapist also testified that, although she had no concerns for the daughter if Jerald were awarded custody, she would have concerns if Holly were awarded custody.
Holly and Jerald were also seen by a licensed psychologist, who diagnosed Holly with psychological problems and also expressed concern if Holly were awarded custody. The psychological profiles of Holly and Jerald were presented during the hearing; they tended to indicate that Jerald had gained control of his anger and was progressing favorably. Conversely, Holly's prognosis was not favorable, and she was not interested in seeking help for her diagnosed psychological problems.
The law is clear:
"In a divorce case, where the evidence has been presented ore tenus, the judgment of the trial court will be presumed correct and will not be reversed unless it is so unsupported by the evidence as to be plainly and palpably wrong. Lucero v. Lucero, 485 So.2d 347 (Ala.Civ.App.1986). The primary concern in determining child custody is the best interests of the child. In the Matter of Terry, 494 So.2d 625 (Ala.Civ.App.1985). To that end, the trial court is given discretion in awarding custody and establishing visitation, and its determination of these matters will not be reversed absent a showing of a clear abuse of discretion. Santmier v. Santmier, 494 So.2d 95 (Ala.Civ.App.1986)."
Hall v. Hall, 577 So.2d 469, 470 (Ala.Civ.App. 1990).
Furthermore, this court lacks the advantage of the trial court, which had the benefit of observing the parties and witnesses. Absent compelling evidence to the contrary, this court will not disturb the judgment *6 of the trier of fact. Johnson v. Johnson, 558 So.2d 954 (Ala.Civ.App.1990).
In deciding what is in the best interests of a child, the trial court should consider many individual facts of the case, including: the sex and age of the child; the characteristics and needs of the child, including his or her emotional, social, moral, material and educational needs; the respective home environments offered by each parent; the characteristics of those seeking custody, including age, character, stability, and mental and physical health; the capacity of each party to provide for the emotional, social, moral, material, and educational needs of the child; the interpersonal relationship between the child and each parent; the effect on the child of disrupting or continuing an existing custodial status; the child's preference, if the child is of sufficient age and maturity; the recommendation of any expert; and any other relevant matter the evidence may disclose. Ex parte Devine, 398 So.2d 686 (Ala.1981). The paramount consideration is the child's best interest, and in an initial custody determination, there is no presumption favoring either party. Phomsavanh v. Phomsavanh, 666 So.2d 537 (Ala.Civ.App.1995).
This case produced over 1,000 pages of testimony; it includes both favorable and unfavorable evidence, as to both parties. There was ample evidence that supports the trial court's order awarding custody to Jerald.
Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
YATES and CRAWLEY, JJ., dissent.
CRAWLEY, Judge, dissenting.
I conclude that awarding custody of a pre-school child to a father who admits to committing domestic violence upon the mother, without appointing a guardian ad litem, is an abuse of discretion. Therefore, I must respectfully dissent.
In the present case, the husband admits to violently attacking the wife. He testified that he and the wife were discussing issues involving his daughter from his previous marriage, and that,
"At that point she stood up and raised her arms at me in a threatening pose, you know, like she was going to hit me. I stood up and grabbed her at that point by the neck, and I choked her and pushed her backwards onto the other couch and laid her down on that couch. The impact did knock her out. She was unconscious at that point."
He further testified that after he saw that she was unconscious, he called 911, and called his parents to stay with his daughter and their daughter, who were at the house at the time of the attack. The husband testified that he had never hit, shoved, or pushed his wife before this incident, and that he had never assaulted any other person before or since this incident. The husband was first charged with domestic violence, and the charge was later upgraded to first degree assault.
The wife was hospitalized for almost one month, with most of that time in the Intensive Care Unit. The wife has also been hospitalized subsequently for further treatment, and there is evidence that she has suffered permanent physical and emotional injuries. The wife testified that the husband had committed violence upon her throughout the marriage, including times while she was pregnant with their child and while she was nursing their child.
The assistant district attorney assigned to the case testified that "it was a very serious case" of domestic violence and that she tried to convince the wife to prosecute the case, but that the wife was unwilling to prosecute because of the consequences to the husband's career. The police investigator assigned to the case also stated that the husband's attack on the wife was very serious, and he strongly recommended prosecution.
The record contains extensive evidence regarding the psychological condition of the husband and of the wife. Psychologists administered standardized psychological tests to the husband and the wife. One psychologist *7 testified that the husband experiences significant anxiety, underlying anger and hostility, and an inability to control his anger. This psychologist further testified that the husband is not likely to become violent again, and that he is still receiving counseling and psychotherapy.
This psychologist testified that the wife experiences problems with depression, schizophrenic-type thinking, and difficulty with distinguishing reality from fantasy. This psychologist further testified that she has deep concerns about the wife's mental health and the wife's future mental health without psychotherapy and medication, which the wife is not presently taking. A clinical social worker testified that the wife's problems originate from being in an abusive relationship, and she did not diagnose the same level of schizophrenic-type thinking as the psychologist had diagnosed.
"An equity court has a heavy burden in proceedings involving minor children. In Wise v. Watson, 286 Ala. 22, 236 So.2d 681 (1970), our supreme court said at 286 Ala. [at] 25, 236 So.2d [at] 684, `[It] is the [equity] court's duty to guard and protect the interest of its infant wards with scrupulous care.'"

Thorne v. Thorne, 344 So.2d 165, 170 (Ala. Civ.App.1977) (emphasis in original).
Although the majority states that "[t]he evidence regarding this incident is undisputed, and it is clear that the incident was directed at [the mother], not the child," I must focus on whether the trial court met its heavy burden owed this child, who was only 16 months old at the time of the incident. 701 So.2d at 5. I acknowledge the undisputed testimony of one of the psychologists that the husband was "not likely" to become violent again. However, I believe the trial court had a duty to ensure that this child's safety was more than just "likely."
"The court in exercising its discretion in a custody case is not bound by the preponderance of the evidence." Leigh v. Aiken, 54 Ala.App. 620, 625, 311 So.2d 444, 448 (1975). To meet its heavy burden of guarding and protecting a child's interest and to exercise "scrupulous care," the trial court must be clearly convinced that the child is not placed in an abusive environment.
"Research ... reveals that more than half of men who batter their female partners also abuse their children.... Child abuse usually begins after a pattern of wife abuse has been firmly established. The abuse inflicted on the child by a battering husband is likely to be serious. Seventy percent of injuries inflicted on children by male perpetrators are severe and eighty percent of child fatalities within the family are attributable to fathers or father surrogates. The more severe the abuse of the mother, the worse the child abuse.

"....
"A lack of information about family violence and the danger it poses to adult and child victims has led the courts to consider the abuse of wives or mothers by male partners as largely irrelevant to custody deliberations and awards, concluding either that men who are violent toward their partners may, nonetheless, be very good fathers or that domestic violence has little effect on the children or that even if the father was violent during cohabitation, he will cease beating and terrorizing the mother upon separation. All of these conclusions are erroneous. Custody cases occur at a time when battered women and children may be most acutely vulnerable to the coercive controls and violent manipulations of battering men. Unless the judiciary is carefully informed about the impact of domestic violence on children and the abused parent, it will inadvertently issue custody and visitation awards that further endanger the abused parent and the children, themselves, who are at risk of both abuse and severe emotional repercussions."
Barbara J. Hart, Family Violence and Custody Codes, Juvenile & Family Court Journal, 1992, vol. 43, no. 4, at 29 (footnotes omitted) (emphasis added).
Other jurisdictions have recognized the inherent danger in placing a child with a parent who has committed domestic violence.
"While Family Court recognized that [the husband's] violent conduct toward [the wife] could not be condoned, it nevertheless *8 concluded that it would be in [the minor's] best interest if [the husband] was his custodial parent. Family Court predicated its determination principally on the fact that in the two-year period [the minor] has lived with [the husband] he has been properly cared for and [the husband] has been gainfully employed and lived a law-abiding life. Because Family Court's determination was contrary to his recommendation, the Law Guardian moved for reargument. On reargument, Family Court adhered to its determination, stating that it was clear that [the minor's] best interest dictates that he should remain in the environment to which he has been accustomed for over two years of his four-year life.
"For several reasons we find that Family Court's determination lacks a sound and substantial basis. Initially, we disagree with Family Court that [the husband's] egregious acts of spousal abuse should not be accorded significant weight. In our view, [the husband's] reprehensible behavior demonstrates his unfitness to be a parent for it reveals that he possesses a character that is manifestly unsuited for the difficult task of providing [the minor] with moral and intellectual guidance (see, Matter of Acevedo v. Acevedo, 200 A.D.2d 567, 606 N.Y.S.2d 307). Moreover, as [the wife's] expert points out, it is possible that [the minor] at some future point might become the victim of [the husband's] explosive emotions and may also develop a pattern of abuse, thereby becoming an abuser himself when he matures."
Rohan v. Rohan, 213 A.D.2d 804, 805-06, 623 N.Y.S.2d 390, 392 (1995).
When both parents are arguably unfit to assume custody of their child, the trial court does not, like a disgruntled voter at the ballot box, have to make a choice between the lesser of two evils. The trial court should consider whether the custody of the child must be given to someone other than the parents.
"The law devolves the custody of infant children upon their parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted. It is a fair presumption, that so long as children are under the control of their parents, they will be treated with affection, and their education and morals will be duly cared for. When, however, this presumption is removed, and the morals, safety, or interests of the children, strongly require their withdrawal from the custody of the father or mother, the court of chancery (which is the general guardian and protector of all infants within its jurisdiction) will interfere, and place the care and custody of them elsewhere."
Striplin v. Ware, 36 Ala. 87, 89 (1860). See also, Smith v. Jones, 275 Ala. 148, 153 So.2d 226 (1963).
In a divorce action, the trial court is not required to appoint a guardian ad litem. D.E.S. v. J.S., 603 So.2d 1064 (Ala.Civ.App. 1992). See also, Cochran v. Cochran, 49 Ala.App. 178, 269 So.2d 884 (Ala.Civ.App. 1970), overruled on other grounds, 289 Ala. 615, 269 So.2d 897 (Ala.1972) (although the trial court is not required to appoint a guardian ad litem in a divorce case, the appointment of one is not reversible error). I believe that a trial court should appoint a guardian ad litem if "the trial court has any concern that the parents are looking out only for their own, and not their children's, interests." Ex parte Bayliss, 575 So.2d 1122 (Ala.1991) (Houston, J., dissenting, at 1122). As noted above, the husband committed serious violence against the wife that required her to undergo extensive hospitalization and caused her to suffer severe emotional trauma. The record also reveals that the wife has serious psychological problems that she is not addressing with therapy or medication. Under these circumstances, I believe that a guardian ad litem is necessary to protect this child's interests, because it appears that the danger of physical abuse and mental instability are present in the child's possible environments.
As soon as the trial court was made aware, by the pleadings or the evidence, that there was reason to doubt the fitness of both parties, the court should have appointed a guardian ad litem.
*9 The legislature has addressed my specific concerns in this case by recently enacting Act No. 95-629, Ala. Acts 1995, which has been codified as Ala.Code 1975, § 30-3-130 through -136. Those Code sections read as follows:
"§ 30-3-130.
"For the purposes of this article `domestic or family abuse' means an incident resulting in the abuse, stalking, assault, harassment, or the attempt or threats thereof. Abuse means any offense under Article 4 (commencing with Section 13A-6-60) of Chapter 6 of Title 13A, and under Chapter 15 (commencing with Section 26-15-1) of Title 26. Stalking means the offenses prescribed in Sections 13A-6-90 to 13A-6-92, inclusive. Assault means the offense prescribed in Sections 13A-6-20 to 13A-6-25, inclusive. Harassment means the offenses prescribed in Section 13A-11-8.
"§ 30-3-131.
"In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.
"§ 30-3-132.
"(a) In addition to other factors that a court is required to consider in a proceeding in which the custody of a child or visitation by a parent is at issue and in which the court has made a finding of domestic or family violence the court shall consider each of the following:
"(1) The safety and well-being of the child and of the parent who is the victim of family or domestic violence.
"(2) The perpetrator's history of causing physical harm, bodily injury, assault, or causing reasonable fear of physical harm, bodily injury, or assault, to another person.
"(b) If a parent is absent or relocates because of an act of domestic or family violence by the other parent, the absence or relocation may not be a factor that weighs against the parent in determining the custody or visitation.
"§ 30-3-133.
"In every proceeding in which there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic or family violence in the location of that parent's choice, within or outside the state.
"§ 30-3-134.
"In every proceeding in which there is at issue the modification of an order for custody or visitation of a child, a finding that domestic or family violence has occurred since the last custody determination constitutes a finding of change in circumstances.
"§ 30-3-135.
"(a) A court may award visitation by a parent who committed domestic or family violence only if the court finds that adequate provision for the safety of the child and the parent who is a victim of domestic or family violence can be made.
"(b) In a visitation order, a court may take any of the following actions:
"(1) Order an exchange of the child to occur in a protected setting.
"(2) Order visitation supervised in a manner to be determined by the court.
"(3) Order the perpetrator of domestic or family violence to attend and complete to the satisfaction of the court, a program of intervention for perpetrators or other designated counseling as a condition of visitation.
"(4) Order the perpetrator of domestic or family violence to abstain from possession or consumption of alcohol or controlled substances during the visitation and for 24 hours preceding the visitation.

*10 "(5) Order the perpetrator of domestic or family violence to pay a fee to defray the cost of supervised visitation.
"(6) Prohibit overnight visitation.
"(7) Require a bond from the perpetrator of domestic or family violence for the return and safety of the child.
"(8) Impose any other condition that is deemed necessary to provide for the safety of the child, the victim of family or domestic violence, or other family or household member.
"(c) Whether or not visitation is allowed, the court may order the address of the child or the victim of family or domestic violence to be kept confidential.
"(d) The court may refer but shall not order an adult who is a victim of family or domestic violence to attend counseling relating to the victim's status or behavior as a victim, individually or with the perpetrator of domestic or family violence as a condition of receiving custody of a child or as a condition of visitation.
"(e) If a court allows a family or household member to supervise visitation, the court shall establish conditions to be followed during visitation. " § 30-3-136.
"The provisions of this article are supplemental and shall be construed in pari materia with other laws relating to civil and criminal procedure."
These Code sections became effective July 31, 1995 (see Act 95-629, § 10), and they apply "[i]n every proceeding" in which child custody is at issue, § 30-3-131. I would remand the cause to the trial court for appointment of a guardian ad litem and would instruct the trial court to apply § 30-3-130 through - 136 in determining custody of the child. I conclude that these Code sections would apply to a trial upon remand even though the action was filed before July 31, 1995, because the statute uses the word "proceeding" rather than "action." See Court Comment to Ala. R. Evid. 1103.
YATES, J., concurs.