MURDOCK, Judge.
This case concerns the custody of a minor child, C.S.B. Although the child’s mother, J.S.D., and his father, C.B.B., were never married, they lived together with the child (first in the paternal grandparents’ home, and then in an apartment they rented from a third party) for approximately a year after the child’s birth, during which time both parties participated in the parenting of the child. About a year after the child’s birth, however, the mother and the child moved out of the apartment; soon thereafter the father brought this action in the Madison County Juvenile Court against the child’s mother, seeking a determination of paternity and legal and physical custody of the child.
The mother responded to the complaint filed by the father by filing an answer and a counterclaim in which she sought deoxy-ribonucleic-acid (DNA) testing to establish paternity as to the child and requested an award of child support. The juvenile court entered an order that, among other things, directed the parties and the child to undergo DNA testing. Subsequent DNA testing showed that C.B.B. was indeed the biological father of C.S.B., and the parties agreed on the issue of paternity of the child, leaving the issues of custody and a potential award of child support to be determined.
After an ore tenus proceeding, the juvenile court entered a judgment setting forth detailed findings and conclusions concerning the characteristics of the mother and the father of the child. The juvenile court stated its ultimate conclusion as follows:
“Wherefore, based on the specifics set out [in this judgment] and the totality of the evidence presented, the court finds that the father has failed to show by *621 clear and convincing evidence that the mother is unfit to maintain custody of the minor child, [C.S.B.]. Absent a showing of unfitness on behalf of the father, he shall share custody, but shall exercise custody on a temporary basis ... on the dates and times set out in Exhibit ‘A,’ referred to as the ‘visitation schedule’....
“Based on the findings of the court in that the mother is to exercise primary custody of the child, the father owes an obligation of support to the child. Therefore, the father shall pay to the mother, for the use and benefit of the minor child, the sum of $287.00 per month.”
The father appealed from the juvenile court’s judgment to the Madison Circuit Court. The circuit court entered an order transferring the father’s appeal to this court, pursuant to Rule 28(D), Ala. R. Juv. P.
With commendable candor, the mother has conceded in her brief to this court that the juvenile court “applied the wrong standard of proof.” The judgment under review expressly provides that the father “failed to show by clear and convincing evidence that the mother [was] unfit to maintain custody.” From the juvenile court’s reference to the mother’s “fitness” to “retain” custody, and its reference to the lack of “clear and convincing” evidence in support of the father’s petition for custody, it appears that that court erroneously applied the principles of Ex parte Terry, 494 So.2d 628 (Ala.1986), in which our Supreme Court noted that in order for a nonparent to overcome a natural parent’s right to his or her child’s custody, there must be “clear and convincing evidence,” 494 So.2d at 630, of either a “ ‘voluntary forfeiture of that right’ ” by the natural parent or a finding of “ ‘misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.’ ” 494 So.2d at 632, quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983) (emphasis omitted).
This case involves an initial custody determination between two parents of a minor child, neither of whom has “voluntarily forfeited” custody of the child to the other, and neither of whom has been found “unfit” by the trial court. The correct standard to apply in this case is the best interest and welfare of the child. See Ex parte Couch, 521 So.2d 987 (Ala.1988); Ex parte McLendon, 455 So.2d 863 (Ala.1984); Brown v. Brown, 602 So.2d 429 (Ala.Civ.App.1992).
The mother contends that this court should address what decision the juvenile court would have reached using the “best-interests” standard. Alabama law does not allow this court to reach that question, however. In Ex parte Perkins, 646 So.2d 46 (Ala.1994), the Supreme Court considered, on certiorari review, whether this court had erred in determining on appeal that custody of a child should be awarded to the child’s father. The Supreme Court affirmed that portion of this court’s judgment in which we concluded that the trial court had improperly applied Ex parte Terry to a case involving a child-custody dispute between two parents; however, the Supreme Court reversed that portion of our judgment directing the trial court to award custody of the child in that case to the father:
“The Court of Civil Appeals properly held, as a matter of law, that the trial court had applied the wrong standard to the facts of this case. Having so held, that court should have reversed the judgment and remanded the cause to allow the trial court to make its determination from the disputed evidence, using the correct standard....
*622 [[Image here]]
[[Image here]]
.. The trial court is in the best position to make a factual determination — it hears the evidence and observes the witnesses.
“Appellate courts do not sit in judgment of disputed evidence that was presented ore terms before the trial court.
[[Image here]]
[[Image here]]
“Only where the findings are not supported by the evidence and are clearly erroneous should an appellate court decide that the facts are not as the trial court found them to be. The fact that the trial court clearly applied the incorrect law to the facts does not authorize the appellate courts to examine the evidence de novo.”
Ex parte Perkins, 646 So.2d at 47 (emphasis added and citations omitted).
On the authority of Ex parte Perkins, we must conclude that in this case the juvenile court is the proper forum to determine, in the first instance, the custody arrangement that will serve the child’s best interests. We therefore reverse the judgment of the juvenile court and remand the cause so that that court may enter a new custody judgment applying the “best-interests” standard, i.e., without a presumption in favor of either the mother or the father.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ„ concur.