PITTMAN, Judge.
Cynthia Lynn Lowery (“the wife”) appeals from a judgment divorcing her from Lilton Cary Lowery (“the husband”) that, among other things, awarded the parties joint legal and physical custody of their children, divided the parties’ marital property, and did not award the wife any type of alimony or an attorney fee.
The parties were married in May 1992; by the time of trial in April 2010, the parties’ two sons and one daughter were 17, 14, and 15 years old, respectively. The parties separated in June 2009, and during the following month the wife filed a divorce complaint seeking, among other things, custody of the children, child support, and alimony. The wife alleged that she had been a “stay at home” mother and the primary caregiver for the children throughout the marriage and that the husband had been the family’s sole breadwinner, and, therefore, she asserted, she needed pendente lite support until a divorce judgment could be entered. The trial court entered a pendente lite order that awarded physical custody of the children to the wife, instructed the husband to continue making all necessary payments to maintain the parties’ status quo until trial, and ordered the parties to refrain from negative behavior and derogatory remarks around the children.
The husband filed an answer in which he admitted most of the wife’s allegations, but he disagreed with the wife’s request that she be awarded primary physical and legal custody of the children; instead, the husband specifically requested that the trial court award joint legal and physical custody of the children to the parties. An initial order divorcing the parties was entered on January 6, 2010; all child-custody, support, and property issues were reserved for trial. The trial court conducted an ore tenus proceeding on April 29, 2010, at which the trial court received evidentia-ry exhibits and heard testimony from the husband and the wife.
The wife testified that she had been a “stay at home” mother and the primary caregiver of the parties’ children, responsible for taking the children to and from school and extracurricular activities, scheduling their medical and dental appointments, and handling the household while the husband worked. She noted that the husband had been employed for many years by his family, who owned a local *703 automobile-sales business, but that in 2003 or 2004 the husband had begun working as a real-estate agent for a local realty company. The wife also testified that, during the marriage, the husband had purchased several parcels of property as investments, and she stated that she wanted a portion of the equity in those parcels.
The wife noted that the husband had failed to abide by the pendente lite order in that he had allowed both the marital residence (where he had been residing during the separation) and the Berkshire residence (where the wife and the children had been residing during the separation) to go into foreclosure because he had not made the applicable mortgage-loan payments; additionally, he had allowed the wife’s motor vehicle to be repossessed because he had not made the car-loan payments for that vehicle. She testified that although the husband had provided her with a replacement motor vehicle, that vehicle had also been repossessed because the husband had failed to make the payments associated with that vehicle. The wife noted that the husband’s father had given her a 1999 model Dodge Stratus automobile so that she would have transportation pending the divorce. The wife testified that, although she had attempted to negotiate with the lending authorities to avoid foreclosure, she had not worked outside the home during the marriage except briefly on two occasions and did not, therefore, have a credit history sufficient to support an extension of credit.
The wife also stated that she had been able to find part-time, minimum-wage employment with the local Department of Human Resources as a case aide. The wife offered a CS-41 “Child-Support-Obligation Income Statement/Affidavit” form indicating that her monthly income was $737, or $8,844 per year. She testified that she had been unable to rent an apartment or to purchase a motor vehicle with her limited income and that she needed support from the husband in order to be able to meet her monthly obligations and to provide a residence for the children.
The wife testified that, during the marriage, the husband had been a daily drinker of alcoholic beverages; she noted that he had regularly become intoxicated at least twice a week. She stated that he had been arrested on two separate occasions for driving under the influence of alcohol, once before and once during the parties’ separation. She testified that, despite his heavy drinking, until the parties had separated he had always paid the family’s bills and had been a good father. Although the husband had been able to move back in with his parents after the foreclosures, the wife testified that she had been forced to rent a room in a friend’s house following her eviction from the Berkshire residence. She stated that because the room she rented on a monthly basis had limited floor space, she had allowed the parties’ two sons to live with the husband. The wife testified that she and the daughter lived and slept together in the room she rented but that she had been trying to find an apartment so all the children could live together as a family again. The wife asked the trial court to award her custody of the children and to order the husband to pay periodic alimony to allow her the opportunity to establish a residence where she and the children could live.
The husband testified that not only had he defaulted on the mortgage secured by the marital residence, he also had suffered foreclosure on the Berkshire residence, an investment property where he had allowed the wife and the children to live during the parties’ separation. The husband also testified that, after foreclosure proceedings had been brought as to both the marital residence and the Berkshire residence, he *704 had offered the wife and the children one of his parents’ properties, but he then admitted that he did not have his parents’ permission to let them live rent-free at that location. He noted that he owned an interest in TTown Properties, LLC (“TTown”), which owned two condominium units in Tuscaloosa. At the time of trial, those units were listed for sale at $65,000 each, but they had remained unsold for the preceding year. In addition, TTown owned two rental houses in Albertville; those properties had been listed for sale at $249,900, but just before trial a tornado had destroyed both houses. The husband insisted that there was no equity in those properties, but he admitted that those properties had been insured for a total of $200,000. The husband testified that he had conveyed his interests in two other real-estate-investment companies, Willow Properties, LLC, and Mountain Group, LLC, back to the other investment members; he testified that he had received no payment for those interests because the properties owned by these companies were already in foreclosure at the time that he relinquished his interests.
Moreover, the husband testified that the parties owed at least $71,000 in federal income taxes that had not been paid during 2007, 2008, and 2009. The husband also stated that he planned to file for bankruptcy protection as soon as he could save the money needed to pay the legal fees associated with doing so. Despite his financial problems, the husband requested that he be awarded joint legal and physical custody of the children.
The trial court entered a judgment the same day as the ore tenus proceeding. In that judgment, the parties were awarded joint legal and physical custody of the three children, with the parties rotating “physical custody and visitation of the children on a weekly basis.” The judgment expressly noted that because the parties had been awarded shared custody of approximately equal time, no child support from either party would be required. The husband was ordered to “immediately” obtain medical-insurance coverage for the children; he was also ordered to pay for 2/3 of all uncovered medical expenses and the wife was instructed to pay the remaining 1/3 of those expenses. The judgment awarded each party the specific personal and real property titled solely in that party’s name or presently in that party’s possession and ordered the title-holder to be responsible for all debt associated with those properties. In addition, the husband was ordered to be solely responsible for paying the parties’ outstanding federal-income-tax debt. The judgment did not award the wife any alimony in gross or periodic alimony; moreover, it did not contain a reservation of the power to award alimony.
The wife appeals and asserts that the trial court erred in its child-custody award, in declining to award the wife either alimony in gross or periodic alimony, and in failing to award her an attorney fee. In original divorce actions, the parties stand on an equal footing with no presumption of entitlement to custody inuring to either parent. See Ex parte Couch, 521 So.2d 987, 989 (Ala.1988); see also Smith v. Smith, 727 So.2d 113, 114 (Ala.Civ.App.1998). The primary concern in making an initial determination of child custody incident to a divorce action is the best interests of the children. See Couch, 521 So.2d at 989; see also C.B.B. v. J.S.D., 831 So.2d 620, 621 (Ala.Civ.App.2002). To that end, the trial court is given wide discretion in awarding custody and establishing visitation, and its determination of such matters will not be reversed absent a showing of a clear abuse of discretion. See Kovakas v. Kovakas, 12 So.3d 693, 697 (Ala.Civ.App.2008); see also Kent v. Green, 701 So.2d 4, 5 (Ala.Civ.App.1996).
*705 The ore tenus rule is based, in part, on the unique position of the trial court to personally observe the parties and witnesses and to assess their demean- or and credibility. See Ex parte Fann, 810 So.2d 631, 633 (Ala.2001); see also Kent, 701 So.2d at 5. Additionally, “ ‘[i]n child custody cases especially, the perception of an attentive trial judge is of great importance.’ ” Fann, 810 So.2d at 633 (quoting Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981)). Factors to be considered in making a child-custody award include the age and sex of the children; their emotional, social, moral, material, and educational needs; and the characteristics of those seeking custody, including their age, character, stability, mental and physical health, and their respective home environments. See Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981).
In this case, both parents sought a favorable child-custody award incident to the parties’ divorce. The wife testified that the husband had regularly abused alcohol during the marriage, but the husband stated that he had stopped abusing alcohol after his last driving-while-intoxicated arrest. He stated that he knew that the wife had been the primary caregiver for the children during their youth, but asserted that the children had become teenagers and that he intended to be more supportive of their activities and interests. Factual determinations based on conflicting evidence are within the sound discretion of the trial court. See C.B.B., 831 So.2d at 622. “Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). This court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court. See Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997). Besides the testimony of the parents, the trial court had evidence that the parties had managed to develop and establish a shared-custody • arrangement pen-dente lite, such that both parents testified that the children had not been adversely impacted by the pending divorce action. Based upon the record evidence, we cannot conclude that the trial court erred to reversal in awarding joint legal and physical custody of the children to the parents in this case.
The wife next asserts that the trial court erred in its marital-property division and its failure to award any type of alimony to her. Alabama law is well settled that property-division issues are within the trial court’s broad discretion, and a judgment must be plainly and palpably beyond the scope of that discretion before the judgment can be disturbed on appeal. See McClelland v. McClelland, 841 So.2d 1264, 1271 (Ala.Civ.App.2002). When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage. See Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996); see also Ex parte Elliott, 782 So.2d 308, 311-12 (Ala.2000), and Morrison v. Morrison, 540 So.2d 80, 81 (Ala.Civ.App.1989) (affirming division of property under which one spouse was awarded all the marital real property).
“A court has no fixed standard to follow in awarding alimony or in dividing marital property!; rjather the award or division need only be equitable and be supported by the particular facts of the case.” Ex parte Elliott, 782 So.2d at 311; *706 see also Hall v. Hall, 895 So.2d 299, 303 (Ala.Civ.App.2004). In examining whether the trial court acted within its discretion in dividing the parties’ property or determining whether to award alimony, an appellate court reviews the entire judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996).
Regarding the parties’ finances, the testimony was clear that the husband had been the primary breadwinner throughout the marriage; after the parties had married, the wife had stayed home to rear the children and the husband had worked for his family business and invested in real estate. After becoming licensed as a realtor, the husband had begun working for a local real-estate company; despite testimony concerning ongoing financial problems, the husband submitted a Form W-2 indicating that he had earned $70,000 from the realty company in 2009. In addition, despite his professed lack of income, the husband’s bank statements from the first two months of 2010 indicate that he had earned $8,562.99 ($3,300.94 + $3,118.50 + $2,143.55) from the realty company during the first 60 days of the year. The wife testified that, the month before trial, the husband had been able to afford to take the children to the Gulf coast for several days during spring break. She also noted that, during the same time the husband allowed her two motor vehicles to be repossessed for nonpayment, he had made all the payments on their eldest son’s motor vehicle and automobile insurance.
The wife, not having worked for a number of years, has no credit history and has been unable to afford to rent an apartment or to pay for a motor vehicle during the pendency of the divorce action. Even if the trial court could properly conclude that the conflicting evidence regarding the husband’s investment properties left no equity to divide between the parties as alimony in gross, the wife’s monthly income of $737 is substantially less than the husband’s monthly earnings. The wide disparity between the husband’s monthly income (ranging at a minimum between $3,000 and $4,400) and that of the wife leads us to the inevitable conclusion that the trial court erred when it failed to award the wife some amount of periodic alimony. It is clear from the record that the wife cannot presently survive without some type of support, and we therefore must reverse the judgment on that issue.
Because we are reversing the judgment for failure to award the wife some amount of spousal support, we pre-termit discussion of the lack of an attorney-fee award to the wife. We simply note that certain “ ‘[factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the sendees performed by the attorney.’ ” Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996) (quoting Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993)). Considering the outcome of the litigation and the wife’s minimal income, an attorney-fee award on remand may be appropriate.
The trial court’s judgment is due to be affirmed as to the child-custody award and reversed as to the failure to award periodic alimony or support to the wife. The wife is awarded $2,000 as an attorney fee on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.